[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 9, 2008
THOMAS K. KAHN
CLERK

No. 07–11743

D.C. Docket No. 05-00364-CV-WS

GEORGIA MCCANN,

Plaintiff–Appellant,

versus

JACK TILLMAN,
MICHAEL HALEY,
DAVID TURNER,
MELISSA BOUNDS,
MOBILE COUNTY PERSONNEL BOARD,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Alabama

**(May 9, 2008)**

Before BLACK and CARNES, Circuit Judges, and RESTANI*, Judge.

---

* Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

RESTANI, Judge:

Appellant Georgia McCann appeals the district court's grant of summary judgment in her suit alleging race discrimination, retaliation, and a hostile work environment under 42 U.S.C. §§ 1981 and 1983. We affirm.

## BACKGROUND

Georgia McCann ("McCann") has been employed as a correctional officer for the Mobile County Sheriff's Office since 1993. From 2003 until September 2005, McCann was assigned to the Metro Barracks of the Mobile County Jail, and her chain of command included her supervisor, Corrections Lieutenant Melinda Bounds,[1] Deputy Warden David Turner, Warden Michael Haley, and Sheriff Jack Tillman.

On June 1, 2004, McCann was on her way to work when she was notified that her son was incarcerated in Washington County. McCann obtained permission to use an emergency vacation day and went to the Washington County jail still wearing her correctional officer uniform. On June 4, 2004, Sheriff Wheat of Washington County wrote a letter to the Mobile County Sheriff's Office complaining about McCann's irrational and disrespectful behavior towards him

---

[1] The complaint incorrectly identifies Melinda Bounds as "Melissa." McCann v. Mobile County Personnel Bd., No. 05-0364-WS, 2006 WL 1867486, at *1 n.1 (S.D. Ala. 2006).

and his deputies while at the Washington County jail. In July 2004, a pre-disciplinary hearing panel determined McCann was guilty of conduct unbecoming an employee in the public service, disorderly conduct, and of violating a lawful and reasonable regulation issued in November 2003, forbidding employees to wear their uniforms off-duty. Sheriff Tillman subsequently suspended McCann without pay for fifteen days, with five days deferred pending six months of good behavior. McCann appealed the decision to the Mobile County Personnel Board, which affirmed the pre-disciplinary panel's determination finding McCann guilty of the charges brought against her and extended her suspension to fifteen days with none deferred.

In August 2004, McCann received an unsatisfactory service rating, due in part to her suspension, which made her ineligible for promotion. McCann was also prevented from working overtime due to a recent policy instituted by Bounds forbidding disciplined officers from working overtime for ninety days after returning to work. In January 2005, McCann filed a charge of discrimination with the EEOC, alleging a hostile work environment. In June 2005, McCann filed suit against Bounds, Turner, Haley, Tillman, and the Mobile County Personnel Board[2]

---

[2] The Mobile County Personnel Board did not participate in this appeal but is a named party in this action.

3

(collectively "Appellees"), alleging that she had was subjected to racial discrimination, retaliation, and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. §§ 1981 and 1983.

On July 6, 2006, the district court granted Bounds, Turner, Haley, and Tillman's motion for summary judgment for all claims except for the retaliatory failure to promote claim against Turner, Haley, Tillman, and the Mobile County Personnel Board. McCann subsequently consented to summary judgment on this remaining claim, advising the court that she "believe[d] that the Court erroneously dismissed her earlier claims and wishe[d] to proceed with an appeal of that immediately." (See Appellant's App., Tabs 80, 82.) On March 26, and April 5, 2007, the district court granted summary judgment on the retaliatory failure to promote claim as to all defendants. (See id., Tabs 81, 83.)

**JURISDICTION AND STANDARD OF REVIEW**

This court has jurisdiction over a final judgment of the district court pursuant to 28 U.S.C. § 1291.[3] We review a district court's grant of summary

---

[3] Under Article III of the Constitution, federal courts are limited in their jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. A case or controversy requires the presence of adverse parties. See GTE Sylvania, Inc. v. Consumers Union of the U.S., Inc., 445 U.S. 375, 382–83 (1980). When "both litigants desire precisely the same result," there is

(continued...)

4

judgment <u>de novo</u>.  See <u>Jones v. Dillard's, Inc.</u>, 331 F.3d 1259, 1262 (11th Cir.

2003).  "Summary judgment is appropriate 'if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law.'"  <u>Eberhardt v. Waters</u>, 901 F.2d 1578,

1580 (11th Cir. 1990) (quoting Fed. R. Civ. P. 56(c)).

## DISCUSSION

McCann alleges that she was subject to race discrimination and retaliation,

in violation of 42 U.S.C. §§ 1981 and 1983, with respect to matters of employment

discipline, compensation, a lowering of service rating, failure to promote, and

failure to reassign or transfer, and that she was subject to a hostile work

environment.

## I.    Discrimination

Title VII prohibits employers from discriminating "against any individual

---

[3](...continued)
"no case or controversy within the meaning of Art. III of the Constitution."  <u>Moore v. Charlotte-Mecklenburg Bd. of Educ.</u>, 402 U.S. 47, 48 (1971) (per curiam).  Thus, "a party normally has no standing to appeal a judgment to which he or she consented."  <u>Reynolds v. Roberts</u>, 202 F.3d 1303, 1312 (11th Cir. 2000) (brackets and quotations omitted).  Because McCann voluntarily consented to summary judgment against her on her retaliatory failure to promote claim against Turner, Haley, Tillman, and the Mobile County Personnel Board, she cannot appeal the dismissal of these claims and, therefore, they are not at issue in this appeal.

with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as here, there is no direct evidence of discrimination, a plaintiff may prove discrimination through circumstantial evidence, using the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish a prima facie case for disparate treatment, McCann must show that "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated [white] employees more favorably; and (4) she was qualified to do the job." EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000). If McCann satisfies these elements, the appellees must provide a legitimate, nondiscriminatory reason for their action. Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). If this burden is met, McCann must then prove that the appellees' reasons are a pretext for unlawful discrimination. Id.

Only the third element is at issue here. In order to determine whether other employees were similarly situated to McCann, we evaluate "'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" Id. (quoting Maniccia v. Brown, 171 F.3d 1364,

6

1368 (11th Cir. 1999)).  In doing so, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  Id. (quotations omitted); see also Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984) ("[T]he misconduct for which [the plaintiff] was discharged [must be] nearly identical to that engaged in by an employee outside the protected class whom the employer retained.") (brackets and quotations omitted).[4]

McCann alleges that the fifteen day suspension she received after she wore her uniform off-duty was imposed based on race discrimination.  McCann claims

---

[4] McCann alleges that she is the only person who was ever disciplined for violating the uniform policy and questions whether the policy was ever disclosed to the officers at the Metro Barracks.  Because she is unable to find a "nearly identical" comparator, McCann argues that requiring "identical misconduct would be improperly drawing the circle of comparators too tightly."  (Appellant's Br. 16.)  McCann advocates for use of the "similar" misconduct standard that has been articulated at times in our past opinions, which requires "similar misconduct from the similarly situated comparator."  Alexander v. Fulton County, Ga., 207 F.3d 1303, 1334 (11th Cir. 2000) (quotations omitted); see also Anderson v.    WBMG-42, 253 F.3d 561, 565 (11th Cir. 2001).  "Nearly identical," however, does not mean "exactly identical."  A range of comparators may satisfy this standard.  While we recognize the difficulty McCann may face in meeting this standard, we are bound by precedent to adhere to the "nearly identical standard."  See Burke-Fowler, 447 F.3d at 1323 n.2 (finding that the court was required to follow the "nearly identical" standard despite a later panel decision that called this requirement into question, reasoning that "when a later panel decision contradicts an earlier one, the earlier panel decision controls").  Further, there is the possibility that even in the absence of what may fairly be described as a nearly identical comparator, some conduct may be so unfairly discriminatory that no reasonable person would find it non-actionable.  That is not the case here and we need not speculate on what such conduct might be.  The comparators that McCann presents on appeal must therefore satisfy the "nearly identical" test.

she was further discriminated against in her compensation because she was not allowed to work overtime for ninety days as a result of being suspended. Finally, McCann alleges that she was discriminated against because her suspension resulted in her receiving an "unsatisfactory" service rating, which disqualified her from receiving a promotion.

The record demonstrates that McCann failed to establish a prima facie case of discrimination for any of her claims.[5] McCann identifies two comparators to demonstrate that white employees committed similar or more serious offenses and were not similarly disciplined. Neither of these comparators, however, are examples of white employees who violated the uniform directive, or who similarly abused the indicia or privileges of their office, but were not disciplined.

In June 2004, Marnita Coleman, a white inmate work supervisor, was not suspended or formally disciplined after being convicted of disorderly conduct and resisting arrest following a dispute with her daughter-in-law. An Internal Affairs investigation determined that Coleman had engaged in unlawful conduct and conduct unbecoming of an officer. McCann argues that Coleman was charged

[5] The district court determined that McCann's change in shift assignment and denial of request to transfer did not amount to adverse employment actions because she did not demonstrate how either action was "serious and material." McCann, 2006 WL 1867486, at *17–18. Because McCann has not advanced arguments relating to this determination on appeal, these alleged acts will not be considered in either her discrimination or retaliation claims.

8

with the same offense and that the failure to discipline Coleman is evidence of discrimination.

As the district court correctly found, Coleman's misconduct is not "nearly identical" to McCann's, making Coleman an improper comparator. McCann's conduct occurred in public and while she was in uniform, while Coleman's conduct occurred at a private residence and in plainclothes. McCann directed her conduct at the sheriff of a neighboring county, while Coleman directed her conduct at her daughter-in-law and "only incidentally" at the arresting deputy. Most notably, while McCann invoked her official position in an effort to obtain a personal goal, Coleman did not.

In May 2005, Jonathan Lindsey, a white correctional officer, made vulgar comments and unprofessional statements to a nurse attending an inmate he was escorting. Lindsay received a written reprimand, but was not suspended. As with Coleman, because Lindsey's misconduct is not "nearly identical" to that of McCann, it cannot be used as a comparator. Lindsey was on duty and therefore was not in violation of the uniform directive. Lindsey's conduct was directed toward a civilian and not a high-ranking officer of a neighboring county. Furthermore, Lindsey was not advancing a private agenda in speaking up on behalf of an inmate.

9

McCann's conduct is qualitatively different from that of the comparators she provided because her conduct involved an abuse of office, while the conduct of the comparators did not. Consequently, because McCann has not presented proper comparators, she has failed to establish a prima facie case of discrimination with respect to her suspension, and the burden will not be shifted to the appellees to provide a legitimate, nondiscriminatory reason for their actions.

Finally, McCann alleges that she was discriminated against because she was not promoted. As indicated, McCann's failure to earn a promotion is related in part to the suspension she received, which was not an act of actionable discrimination. Further, a prima facie case of discriminatory failure to promote requires a showing that "other equally or less qualified employees who were not members of the protected class were promoted." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004). The only evidence presented by McCann demonstrates that the two candidates promoted were black, and thus, she has failed to meet her burden as to this claim.[6]

Accordingly, the district court properly granted summary judgment on all of McCann's racial discrimination claims.

---

[6] Because McCann has not made out a prima facie case of racial discrimination, her argument that pretext can be shown through language demonstrating discriminatory animus will also not be reached.

10

## II.    Retaliation

Title VII prohibits an employer from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice . . . or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To establish a prima facie showing of retaliation under Title VII, the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004) (quotations omitted). As with McCann's discrimination claim, if the appellees articulate legitimate reasons for their actions, McCann must then "show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999). In order to do so, McCann must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Cooper, 390 F.3d at 725 (quotations omitted).

The appellees challenge the third element of McCann's retaliation claim,

11

which requires a plaintiff to demonstrate that "the decision-maker[s] [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." Gutpa v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) (alterations in original) (quotations omitted); see also Griffin v. GTE Fla., Inc., 182 F.3d 1279, 1284 (11th Cir. 1999) ("At a minimum, [a plaintiff] must show that the adverse act followed the protected conduct; this minimum proof stems from the important requirement that the employer was actually aware of the protected expression at the time it took adverse employment action.") (quotations omitted). We have found that "'close temporal proximity' may be sufficient to show that the protected activity and the adverse action were not 'wholly unrelated.'" Gutpa, 212 F.3d at 590 (quoting Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999)).

McCann alleges that she suffered retaliation after filing a written grievance on July 14, 2004, protesting her suspension. She alleges that Bounds retaliated against her by sending out a memorandum on July 19, 2004, advising McCann's supervisors that suspended officers were not permitted to work overtime, which affected her compensation. Bounds was listed as a recipient on McCann's grievance and appellees never stated that Bounds did not receive it at approximately the time it was sent. Thus, the five days between McCann's

12

grievance and Bounds' overtime memorandum satisfies the "close temporal proximity" test of the causation element.  See McCann, 2006 WL 1867486, at *7.

Bounds articulated a nondiscriminatory reason for her memorandum, explaining that employees who are suspended should not be able to recover for their unpaid leave by working overtime upon their return to work.  McCann attempts to show pretext by alleging that employees of no other department of the Sheriff's Office were forbidden from working overtime.  The district court noted, however, that although a departmental policy had not been implemented, Bounds' superiors had previously discussed instituting this policy, but could not do so because of staffing shortages.  According to at least one superior, Bounds' directive was consistent with their previous conclusion that this policy would be appropriate.

The policy, which was agreed upon prior to the grievance, is entirely logical, as it ensures the suspension will have its intended effect.  McCann therefore has failed to show a genuine issue of material fact that Bounds' legitimate reason for her employment decision was pretextual.  See, e.g., Wascura v. City of S. Miami, 257 F.3d 1238, 1247 (11th Cir. 2001) (affirming summary judgment for employer where legitimate reasons for the termination decision were offered by the defendant and employee presented virtually no evidence, other than

temporal proximity of the events); Gutpa, 212 F.3d at 590–91 (finding that although there was close temporal proximity between the adverse employment action and the protected activity, employee failed to create a genuine issue of material fact that the employer's nondiscriminatory reasons for its action were pretextual).[7]

McCann also alleges that she received an unsatisfactory service rating that prevented her promotion.[8] McCann's service rating is dated August 24, 2004, which is approximately six weeks after she filed her grievance as to the suspension. As indicated, Bounds was an included recipient on McCann's grievance and no argument has been raised that she did not receive it timely. The six weeks between McCann's grievance and the service rating arguably satisfies the proximity requirement. See, e.g., Farley, 197 F.3d at 1337 (time frame of seven weeks sufficiently proximate when employers aware of plaintiff's EEOC

---

[7] Moreover, the district court noted that McCann provided no explanation for why Bounds would have been motivated to retaliate against her, as Bounds' only involvement in the imposition of the suspension was to testify about the uniform directive. See McCann, 2006 WL 1867486, at *8.

[8] The district court determined that McCann's two acts of alleged opposition to perceived race discrimination that occurred before her suspension, her filing of a Title VII lawsuit in 1999 and her submission of an officer narrative form on February 18, 2004, occurred too long before her suspension to support an inference of causation. McCann, 2006 WL 1867486, at *6. Because McCann has not advanced arguments relating to these acts on appeal, they will not be considered.

charge shortly after its filing); <u>Donnellon v. Fruehauf Corp.</u>, 794 F.2d 598, 601 (11th Cir. 1986) ("The short period of time [one month] between the filing of the discrimination complaint and the [adverse employment action] belies any assertion by the defendant that the plaintiff failed to prove causation.")

Bounds' proffered reasons for the low service rating included McCann's chronic tardiness, her manner of requesting leave by calling in, and her suspension. McCann alleges that these reasons are a pretext for unlawful retaliation because she has always received satisfactory service ratings before and has been commended by other officers on her work performance, other officers had less leave remaining than McCann, her suspension was due to off-duty conduct and unrelated to her job performance, and her supervisor Sergeant Taylor apologized for giving her a low service rating.

McCann has failed to demonstrate that Bounds' reasons for taking the adverse action were pretextual. As the district court properly found, "[t]he satisfactory ratings of previous supervisors can be of no consequence without a showing that, when under their supervision, the plaintiff had leave and tardiness issues similar to those noted by Bounds." <u>McCann</u>, 2006 WL 1867486, at *10. Significantly, "differences in the evaluation of [a plaintiff's] performance do not establish a genuine issue on pretext. Different supervisors may insist upon

15

different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important." Rojas v. Florida, 285 F.3d 1339, 1343 (11th Cir. 2002). Thus, the opinions of former supervisors and co-workers that do not address McCann's leave and tardiness issues cannot demonstrate pretext.[9]

McCann's attempts to show pretext by providing the leave balances of other officers and by claiming that her suspension was unrelated to job performance are misguided. McCann was not rated unsatisfactorily for a low leave balance, but rather for the manner in which she requested leave. McCann also has provided no evidence that her suspension for off-duty conduct cannot be considered in evaluating an officer's service rating, particularly when the suspension was for abuse of office. In fact, the Sheriff's Office issued a standard operating procedure explicitly stating that "it is incumbent upon each member and employee to be continuously on guard against any manner of unbecoming conduct or unprofessional behavior" and that "[c]onduct or deportment that is determined to be prejudicial to the good order, efficiency and discipline of the Mobile County Sheriff's Office (MCSO) may subject the offender to disciplinary action."

---

[9] This reasoning also applies to McCann's claim that Sergeant Taylor apologized for giving her a low service rating, as supervisors vary in their opinions as to what constitutes satisfactory employee performance.

(Appellant's App., Tab 82 at 1.)

Finally, McCann alleges that she was retaliated against when she was denied a promotion. McCann voluntarily consented to summary judgment on this claim against all of the defendants except Bounds. See supra note 2 and accompanying text. As McCann has not argued or presented any evidence that Bounds was connected to the promotion decision, except in relation to the service rating, and the service rating has not been shown to be the result of actionable discrimination, summary judgment was correctly granted against McCann as to the retaliatory failure to promote claim against Bounds.

Accordingly, McCann has failed to meet her burden to demonstrate that her employers' reasons for their actions as to overtime, performance rating and promotion were actually a pretext for retaliatory conduct. The district court properly granted summary judgment on McCann's retaliation claims.

## III. Hostile Work Environment

Title VII prohibits a hostile work environment in which "a series of separate acts . . . collectively constitute one 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002) (citing 42 U.S.C. § 2000e-5(e)(1)). As opposed to "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," a hostile work environment claim

17

addresses acts "different in kind" whose "very nature involves repeated conduct," such as "'discriminatory intimidation, ridicule, and insult.'" Id. at 114–16 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Thus, these "claims are based on the cumulative effect of individual acts." Id. at 115.

To establish a hostile work environment claim, McCann must show: "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). Determining whether the harassment was sufficiently severe or pervasive involves "both an objective and subjective component." Id. at 1276. In determining the objective element, a court looks to "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Morgan, 536 U.S. at 116 (quoting Harris, 510 U.S. at 23); see also Miller, 277 F.3d at 1275.

18

McCann alleges she was subject to a hostile work environment where white employees made derogatory racial comments about blacks, harsher discipline was received by black employees, and complaints of discrimination were subject to retaliation and not investigated. According to McCann, however, the only racially insensitive comments she heard between 2003 and 2005 were when Bounds called her "girl" and called two male black employees "boys." McCann also alleges that, at some time prior to 2003, out of McCann's hearing, Tillman referred to a former black employee as a "nigger bitch" and declared that "he had never received the 'nigger vote' and that he didn't want it."[10] (Appellant's Br. 33–34.)

As the district court properly found, the remainder of McCann's allegations concern "patterns of discrimination practiced against black employees," which constitute discrete acts that must be challenged as separate statutory discrimination and retaliation claims. McCann, 2006 WL 1867486, at *19–20; see also Morgan, 536 U.S. at 111–113. These cannot be brought under a hostile work environment claim that centers on "discriminatory intimidation, ridicule, and insult." See Morgan, 536 U.S. at 116 (quotations omitted).

---

[10] Although these offensive statements occurred outside the statutory time period, as long as "an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Morgan, 536 U.S. at 117. Thus, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period." Id.

19

Although offensive, such instances of racially derogatory language alone, extending over a period of more than two years, are too sporadic and isolated to establish that her employers' conduct was so objectively severe or pervasive as to alter the terms and conditions of her employment. As the district court properly found, the only term ever directed at McCann was "girl" and the term "boy" was used only once in front of her. McCann, 2006 WL 1867486, at *20. McCann does not allege that anyone else ever used racially derogatory speech towards her. Although McCann heard of racial epithets being spoken twice by Sheriff Tillman, these were never directed at McCann, nor spoken in her presence. Id.; see also Harris, 510 U.S. at 21 (finding that the "'mere utterance of an . . . epithet which engenders offensive feelings in a employee,' . . . does not sufficiently affect the conditions of employment to implicate Title VII") (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). Moreover, although McCann alleges that she was upset by this language, she has not demonstrated that the alleged environment interfered with her job performance. In fact, McCann actually testified that it did not affect her work. (See Appellant's App., Tab 1 at 33.)

Consequently, the evidence presented by McCann was insufficient to support a claim of hostile work environment, and the district court properly granted summary judgment with respect to this claim.

## CONCLUSION

Accordingly, we affirm the district court's grant of summary judgment as to all claims.