[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 1, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15230
Non-Argument Calendar

_____

D. C. Docket No. 06-02230-CV-WSD-1

CARL H. FREEMAN,

Plaintiff-Appellant,

versus

CITY OF RIVERDALE,
D.M. EDWARD,
individually and in his official
capacity as Riverdale's police chief,
PAUL WEATHERS,
individually and in his official
capacity as Riverdale's police major,
BILLY BECKETT,
individually and in his official
capacity as Riverdale's city manager,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 1, 2009)

Before DUBINA, Chief Judge, TJOFLAT and BLACK, Circuit Judges.

PER CURIAM:

Carl H. Freeman appeals the district court's grant of summary judgment in favor of his employer, the City of Riverdale (City), on his claims of racial discrimination, retaliation, and a hostile work environment under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a), 2000e-5(e)(1). On appeal, Freeman argues, *inter alia*, he presented sufficient evidence to establish a hostile work environment. Additionally, he argues he presented sufficient evidence to establish *prima facie* cases of retaliation and discrimination against the City. We address his arguments in turn.

I.

First, Freeman contends the evidence he presented was sufficient to establish a hostile work environment. Specifically, Freeman points to his allegations that Police Major Greg Barney and his co-workers used racially derogatory language; his request for leave to attend training was denied; he was falsely accused of battering an eight-year-old child for which he was terminated in 2001 and, upon reinstatement, was retaliated against by being forced to perform janitorial tasks; the City's mayor told Freeman she thought they had "gotten rid of" him; and he was falsely accused of violating police policies and terminated again in 2003. He also

2

argues the deposition testimony of Barney, who had also filed a grievance with the City, constituted an admission by the City.

To establish a hostile work environment claim pursuant to Title VII, a plaintiff has the burden of proving "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). To meet this burden, a plaintiff must show: (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic, such as race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create aa discriminatory abusive working environment; and (5) the employer is responsible for such environment under a theory of vicarious or direct liability. *Id.* The requirement that the harassment be "severe or pervasive" contains an objective and subjective component. *Id.* at 1276. "Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive." *Id.* (internal quotations omitted).

3

In evaluating the objective severity of the harassment, we look at the totality of circumstances and consider, *inter alia*: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 118 S. Ct. 2275, 2283 (1998). In *McCann v. Tillman*, 526 F.3d 1370 (11th Cir.), *cert. denied*, 129 S. Ct. 404 (2008), we held that an African American employee's allegations that a white employee called her "girl" and called two African American male employees "boys," and another coworker referred to a former African American employee as a "nigger bitch," did not amount to severe or pervasive harassment. *Id.* at 1378-79. We determined that "[a]lthough offensive, such instances of racially derogatory language alone, extending over a period of more than two years, [were] too sporadic and isolated to establish that her employers' conduct was so objectively severe or pervasive as to alter the terms and conditions of her employment." *Id.* at 1379. In contrast, the frequent and consistent use of offensive language weighs in favor of a plaintiff's hostile work environment claim. *See Reeves*, 525 F.3d at 1146 (use of offensive language nearly every day for three years is severe and

pervasive); *Miller*, 277 F.3d at 1276 (ethnic slurs directed at the plaintiff three to four times daily is severe and pervasive).

Title VII requires employees to file a charge with the EEOC within 180 days of the alleged unlawful employment activity. 42 U.S.C. § 2000e-5(e)(1). In determining whether claims are timely, courts must distinguish between allegations which charge discrete acts of discrimination or retaliation from allegations that charge repeated acts or events centering on discrimination, intimidation, and ridicule. *McCann*, 526 F.3d at 1379. The former grouping constitutes "discrete acts that must be challenged as separate statutory discrimination and retaliation claims," while the latter grouping is viewed as a single, continuous unlawful employment practice. *Id.* We have held that hiring decisions, work assignments, and alleged retaliation claims constitute discrete acts and not acts that are considered part of a hostile work environment. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 970 (11th Cir. 2008). Discrete acts are subject to time-bar if a charge is not filed within 180 days. *Id.* Finally, Federal Rule of Civil Procedure 30(b)(6) provides a procedure by which an individual can be designated to testify on behalf of a governmental agency.

Freeman cannot establish a hostile work environment by reference to his 2001 or 2003 terminations, his assignment to janitorial tasks upon reinstatement, or

the denial of his requests for training, because they were discrete acts that were required to be challenged separately. In addition, Freeman did not establish that Barney was designated to testify on behalf on the City. In total, Freeman alleged approximately 11 incidents involving the use of racially derogatory language that spanned the length of his thirteen-year career, with five of those incidents involving comments made directly toward him or otherwise in his presence. These statements were too sporadic and isolated to establish discrimination so objectively severe and pervasive as to alter the terms and conditions of Freeman's employment. Therefore, Freeman's allegations were insufficient to support a hostile work environment claim.

## II.

Freeman next argues he produced sufficient evidence to establish *prima facie* cases of retaliation and discrimination against the City regarding a denial of leave for training in 2003 and his termination later that year. In addition, he argues he produced sufficient evidence to show that the City's proffered reasons for denying him training and for his termination were pretextual because white officers were allowed to attend training courses and violated police policies without being disciplined or terminated. The City stated that Freeman was denied leave for training because of a staff shortage and was terminated for lying during an

6

investigation into a charge of disorderly conduct that was brought against him, to which he eventually pled *nolo contendere*.

When a plaintiff uses circumstantial evidence in an attempt to prove discrimination or retaliation under Title VII, we apply the burden shifting approach articulated in *McDonnell Douglas Corp. v. Green*, 93 S. Ct. 1817 (1973). *Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008). Here, Freeman agrees the *McDonnell Douglas* test is appropriate for his claims. Under the *McDonnell Douglas* framework, a plaintiff has the initial burden to establish a *prima facie* case of discrimination, which creates a presumption that the employer discriminated against the plaintiff. *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1162 (11th Cir. 2006).

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for the action taken, which rebuts the presumption of discrimination. *Id.* If such a reason is presented, the plaintiff must establish that the employer's reason is a pretext for unlawful discrimination. *Id.* Despite the shifting of burdens of production, the ultimate burden to prove intentional discrimination remains with the plaintiff. *Id.*

In order to demonstrate pretext, a plaintiff must show the employer's offered reason was not the true reason for its decision, "either directly by persuading the

court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*) (ADEA case); *see also Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1267 n.6 (11th Cir. 2001) (noting that the *McDonnell Douglas* framework applies to both Title VII and ADEA cases).

Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Title VII also makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* case of retaliation under Title VII, a plaintiff

8

must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. *Crawford*, 529 F.3d at 970. To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside his class more favorably. *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

Even assuming that Freeman had made *prima facie* cases of retaliation and discrimination, the district court did not err in granting summary judgment to the City on these claims because Freeman failed to show the City's legitimate reasons for denying him leave to attend training courses and for terminating him were pretextual. Although Freeman generally alleged that white officers were allowed to attend other training sessions, he did not show that other officers were allowed to attend training sessions at the time when Freeman's request was denied. In addition, Freeman did not show that other officers were not disciplined for lying during investigations into their criminal conduct, which was given as the primary reason for Freeman's termination. As a result, Freeman's allegations were insufficient to support his Title VII retaliation and discrimination claims.

9

Accordingly, the district court did not err in granting summary judgment, and we affirm.

**AFFIRMED.**