[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11791
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-02310-RLV


JANICE STURDIVANT,

Plaintiff-Appellant,

versus


THE CITY OF ATLANTA,
CHIEF GEORGE TURNER,
in his individual capacity,
SGT. JOHN LUDWIG,

Defendants-Appellees,

MAYOR KASIM REED,
in his individual capacity, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 6, 2015)

Before HULL, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Janice Sturdivant appeals the district court's grant of summary judgment in favor of the City of Atlanta ("the City") and Atlanta Police Chief George Turner, in his individual capacity, on her employment discrimination claims under Title VII and 42 U.S.C. § 1983. After review, we affirm.

## I.  FACTUAL BACKGROUND

### A.    Claims on Appeal

In the district court, Sturdivant voluntarily dismissed her race discrimination claims, all of her claims against Mayor Kasim Reed and City Council President Caesar Mitchell, her Title VII claims against Police Chief Turner and Sergeant John Ludwig, and her § 1983 claims against Sergeant Ludwig and against Chief Turner in his official capacity. In addition, on appeal, Sturdivant does not challenge the district court's entry of summary judgment in favor of the City of Atlanta on her Title VII disparate treatment gender discrimination claim or the district court's decision to decline to exercise supplemental jurisdiction over her state law claims against Sergeant Ludwig and to dismiss those state law claims

2

without prejudice. Thus, these claims are abandoned. See Carmichael v. Kellogg, Brown & Root Serv., Inc., 572 F.3d 1271, 1293 (11th Cir. 2009).

As a result, the only claims on appeal are Sturdivant's Title VII hostile work environment sexual harassment claim against the City of Atlanta and her § 1983 gender-based equal protection claim against the City of Atlanta and Chief Turner in his individual capacity.

## B.    Text Messages to Sturdivant

Sturdivant works for the Atlanta Police Department's ("APD") human resources department as the Assistant Commander of Human Resources and holds the rank of sergeant. Sturdivant's duties include overseeing payroll, drug screening, and the grievance procedure, and also acting as the EEOC liaison between APD and the City's human resources department.

Sometime in 2009, another APD officer, Sergeant Ludwig, began to send text messages to Sturdivant's city-issued cell phone that commented on her physical appearance and asked about her private life. Sturdivant did not work or socialize with Sergeant Ludwig and had met him only a couple of times through work. Ludwig sent Sturdivant these text messages intermittently, every three to four months, until June 2010. Sturdivant responded to Ludwig that he was being disrespectful, but did not report his text messages to her superiors.

3

On June 9, 2010, Ludwig sent Sturdivant a series of text messages commenting on her body, which she ignored.  Later that evening, Ludwig sent her a photograph of his erect penis, stating, "[T]his is what happens to me when I'm thinking about you."  Sturdivant told Ludwig he had crossed the line and that she would report him to the Office of Professional Standards ("OPS").

## C.    Sturdivant's First Complaint

The next morning, June 10, 2010, Sturdivant reported Ludwig's text to her work supervisor and another superior officer, who immediately called OPS.  Two days after receiving the photograph, on June 11, 2010, Sturdivant went to OPS and filed a formal complaint.  Ten minutes after giving her statement to OPS, Sturdivant received a text message from Ludwig stating he "really blew it this time" and indicating he knew she had made the complaint against him.  Sturdivant complained to OPS that her complaint had not been kept confidential.

## D.    Text Messages Stop After Complaint

A few days after Sturdivant's OPS complaint, OPS interviewed Ludwig. OPS told Ludwig to have no further contact with Sturdivant.  Sturdivant admits that she has received no further texts from Ludwig.

After filing her OPS complaint, Sturdivant did see Ludwig three or four times in the police headquarters building where she worked, but Ludwig never approached her or spoke to her.  About a week after Sturdivant's OPS complaint,

4

at a staff meeting, Ludwig laughed and smirked at Sturdivant, but did not say anything to her.  On another occasion about two weeks after her OPS complaint, Sturdivant saw Ludwig standing in the hallway outside her office talking to his superior officer.

## E.    Formal Investigation and Discipline

A few weeks after filing her OPS complaint, Sturdivant learned that OPS had not yet begun a formal investigation and had not retrieved and preserved the text messages and the photograph on her cell phone, even though OPS is supposed to investigate sexual harassment complaints immediately.  Sturdivant told OPS that if it did not start the formal investigation by assigning her case a control number, she would call an attorney.

OPS started the formal investigation on July 1, 2010, about three weeks after her OPS complaint was filed.  During the interim, there were no further text messages from Ludwig.  Because she felt OPS was not taking her complaint seriously, Sturdivant called Deputy Chief Shawn Jones.  Deputy Chief Jones called OPS to inquire about Sturdivant's complaint, and OPS told him that "it's just [Sturdivant], she'll get over it."

During the OPS investigation, Ludwig did not deny sending Sturdivant the texts and photograph.  In January 2011, disciplinary proceedings against Ludwig began, but then were postponed so that OPS could interview additional witnesses.

Disciplinary proceedings concluded in late March 2011, and Ludwig was found guilty of failing to follow directives, namely, the City's sexual harassment policy. On April 7, 2011, almost ten months after Sturdivant filed her OPS complaint, Ludwig was suspended for ten days and restricted from accessing the headquarters building where Sturdivant worked without prior approval. Ludwig's discipline was in accordance with the City's sexual harassment policy, which called for disciplinary action ranging from a ten-day suspension to dismissal for an employee's first offense.

## II.  DISCUSSION

### A.    Title VII Claim of Hostile Work Environment Sexual Harassment

The district court did not err in concluding that Sturdivant's Title VII hostile work environment claim was time-barred. Sturdivant did not file her EEOC charge until April 19, 2011, more than 180 days after Ludwig's June 2010 laughing and smirking at Sturdivant, the last acts that could arguably be said to have contributed to the alleged hostile work environment. See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001); 42 U.S.C. § 2000e-5(e)(1) (requiring an employee in a non-deferral state such as Georgia to exhaust administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice); Nat'l R.R. Passenger Corp. v Morgan, 536 U.S. 101, 116-17, 122 S. Ct. 2061, 2074 (2002) (concluding that for hostile

6

work environment claims, which involve the cumulative effect of many separate acts, the charge is timely if "an act contributing to the claim occurs within the filing period").

Sturdivant contends that her EEOC charge was timely because the APD's delayed and inept handling of her OPS complaint up to April 2011 were acts contributing to the hostile work environment. The district court properly rejected this argument based on McCann v. Tillman, 526 F.3d 1370 (11th Cir. 2008), in which this Court concluded that claims that "complaints of discrimination were subject to retaliation and not investigated" could not "be brought under a hostile work environment claim that centers on 'discriminatory intimidation, ridicule, and insult,'" but rather "must be challenged as separate statutory discrimination and retaliation claims." McCann, 526 F.3d at 1378-79 (quoting in part Morgan, 536 U.S. at 116, 122 S. Ct. at 2074).

In any event, assuming the EEOC charge was timely, summary judgment on the merits was appropriate because Sturdivant failed to establish a prima facie hostile work environment claim.[1] To establish a prima facie case, the plaintiff must show, among other things, that the employer is responsible for the hostile

---

[1]We review a district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the party opposing the motion. Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(a).

7

work environment "under either a theory of vicarious or of direct liability." McCann, 526 F.3d at 1378 (quotation marks omitted).  Where, as here, the harasser is a coworker, rather than a supervisor, the employer is responsible for the conduct only "if it knew or should have known of the harassing conduct but failed to take prompt remedial action."  Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002).

It is undisputed that Sturdivant's supervisors at APD knew nothing of Ludwig's behavior until Sturdivant reported it on June 10, 2010, at which point they referred Sturdivant to OPS to file a formal complaint.  Further, once Sturdivant reported Ludwig's text messages to OPS, OPS told Ludwig to have no further communication with Sturdivant, and Ludwig complied.  Ludwig was disciplined according to the City's sexual harassment policy.  Ludwig also was instructed not to go in the building where Sturdivant worked without prior authorization.  Most importantly, Ludwig admitted sending the text messages, and the text messages stopped immediately after her formal complaint.

Sturdivant stresses that the City's investigation and disciplinary proceedings took about ten months to complete and contends that OPS deliberately dragged out the investigation and disciplinary proceedings and intentionally failed to preserve Ludwig's text messages.  Sturdivant did not produce any evidence to support her contention, however.  Further, APD officials involved in the OPS investigation

8

testified that attempts were made as early as June 14, 2010, to obtain Ludwig's text messages from Verizon once OPS realized Sturdivant's cell phone had automatically deleted them and that the disciplinary proceedings were suspended while OPS conducted interviews of additional witnesses who could support Sturdivant's complaint.  Given these undisputed facts, no reasonable jury could conclude that the City was responsible for Ludwig's conduct.

**B      Section 1983 Equal Protection Claim**

The district court also did not err in granting summary judgment to the City and Chief Turner on Sturdivant's gender-based equal protection claim.[2]  The gravamen of Sturdivant's equal protection claim is that the City and Chief Turner were deliberately indifferent to a practice at APD of discouraging female employees from filing formal sexual harassment complaints and failing to promptly investigate and resolve female employees' sexual harassment complaints.

As there is no respondeat superior theory of liability under § 1983, to hold an individual supervisor liable, the plaintiff must show either that the supervisor personally participated in the constitutional deprivation or that there was a causal connection between the supervisor's actions and the constitutional deprivation. Crawford v. Carroll, 529 F.3d 961, 978 (11th Cir. 2008).  Sturdivant does not

---

[2]Because the factual basis for Sturdivant's § 1983 equal protection claim is the same as her Title VII hostile work environment claim, the elements of her § 1983 claim mirror the elements of her Title VII claim.  See Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008); Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985).

9

contend Chief Turner personally participated in the deprivation of her constitutional rights, but tries to show a causal connection between Chief Turner's actions (or inactions) and the alleged constitutional deprivation. To demonstrate the requisite causal connection, the plaintiff must show a "history of widespread abuse" that would put the supervisor "on notice of the need to correct the alleged deprivation." Id. (quotation marks omitted). "[I]solated occurrences" are insufficient; rather, the plaintiff must show widespread abuse that is "obvious flagrant, rampant, and of continued duration." Id. (quotation marks omitted).

Similarly, to hold a municipality liable, the plaintiff must show that the deprivation of rights was caused by a custom or policy of the municipality. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978). A "custom" is a practice "so widespread as to have the force of law." Bd of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997). Further, the plaintiff must show that the municipal action was taken with "deliberate indifference to its known or obvious consequences." Davis v. DeKalb Cnty. Sch. Dist., 233 F.3d 1367, 1375-76 (11th Cir. 2000) (quotation marks omitted).

Here, it is undisputed that the City had a sexual harassment policy, that APD provided Ludwig with sexual harassment training, and that APD had not received any prior sexual harassment complaints involving Ludwig. Moreover, as soon as

10

Sturdivant reported Ludwig's text messages, her superiors contacted OPS and told Sturdivant to file a formal complaint. After the OPS investigation, Ludwig was suspended for ten days, in accordance with the City's sexual harassment policy. As already noted, while the investigation and disciplinary process took about ten months, Sturdivant did not present any evidence that these delays were deliberate or based on her gender.

Additionally, Sturdivant did not provide any evidentiary support for her claim that there was a custom or practice at APD of encouraging female officers to resolve sexual harassment complaints informally and of dragging out investigations of female officers' formal sexual harassment complaints, while promptly resolving those of male officers. Sturdivant's conclusory assertions in her declaration that such a custom or practice existed and that Chief Turner knew of it are not facts simply because Sturdivant avers that they are based on her "29 years with APD." Sturdivant's declaration did not provide any supporting facts from which a jury could reasonably conclude that the purported custom or practice was so widespread and obvious that the City and Chief Turner could be said to be on notice of it. See Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.").

Sturdivant argues, without explanation, that her duties as the EEOC liaison gave her personal knowledge of these matters, but her declaration does not make this claim and the record does not support it.  In fact, in her deposition, Sturdivant testified that her duties did not involve sexual harassment complaints, which are handled exclusively by OPS, a department in which she has never worked.

Indeed, Sturdivant further testified that, as a supervisor, she received only one complaint of sexual harassment from a direct report, a female officer named Cassandra Pruitt, and that Sturdivant and Deputy Chief Shawn Jones (a male) together contacted OPS and then transported Pruitt to OPS to file a formal complaint.  On another occasion, Sturdivant gave a statement in an OPS investigation into a sexual harassment complaint filed by a female recruit at the police academy.  In other words, as to Sturdivant's only personal experiences with other female officers' sexual harassment complaints, Sturdivant did not claim the female officers were discouraged from filing a formal complaint or that their complaints were not properly investigated.  On this record, Sturdivant's conclusory statements about a custom or practice in handling male and female officers' sexual harassment complaints and Chief Turner's awareness of it do not appear to be based on Sturdivant's personal knowledge and carry no probative value.

For all these reasons, we affirm the district court's order granting summary judgment to the City and Chief Turner.

**AFFIRMED.**