[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16431
Non-Argument Calendar

_____

D.C. Docket No. 3:14-cv-00147-TCB


ROBERT D. TYLER,

Plaintiff - Appellant,

versus

KIA MOTORS MANUFACTURING GEORGIA, INC.,

Defendant - Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 12, 2017)

Before JORDAN, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Robert Tyler appeals the district court's grant of summary judgment in favor of Kia Motors Manufacturing Georgia, Inc. on his retaliation claim under Title VII, 42 U.S.C. § 2000e-3, and 42 U.S.C. § 1981.  Mr. Tyler alleged that Kia retaliated against him after he engaged in the protected activity of reporting the company's discriminatory practices.  On appeal, Mr. Tyler argues that the district court erred by granting Kia's motion for summary judgment because the company failed to offer legitimate, non-retaliatory reasons for suspending and terminating his employment.  Kia, in response, asserts that Mr. Tyler was investigated for improperly downloading and copying company documents, that he forwarded proprietary documents to a personal email account without permission, that he failed to return the documents to Kia, and that he has not provided evidence demonstrating that its proffered reasons for termination were pretextual.

After review of the record and consideration of the parties' briefs, we affirm.

## I

Because we write for the parties, we assume their familiarity with the underlying record and recite only what is necessary to resolve this appeal.

Kia hired Mr. Tyler as a human resources manager in 2007.  His responsibilities at Kia included recruitment of employees, resolving issues between employees, managing grievances filed against the company, addressing

discrimination-related issues, and establishing systems to monitor and manage certain affirmative action data as required by law.

Despite receiving several promotions and raises within his first three years at Kia, Mr. Tyler was unhappy with some of the company's hiring and management practices. In September of 2010, Mr. Tyler filed a report with his supervisor, Randy Jackson, outlining his concerns about the company's hiring practices and mistreatment of several employees. Two months later, he filed a discrimination charge with the Equal Employment Opportunity Commission, alleging discrimination (based on national origin) and retaliation in violation of Title VII, because Kia executives purportedly made threatening remarks regarding the security of his job based on his initial report.

During his employment, Mr. Tyler was given secure virtual private network access in order to work remotely and to access confidential documents like attorney-client communications, personnel files, and internal investigation reports without having to download or copy confidential materials. Mr. Tyler signed a confidentiality agreement indicating that he understood his access to sensitive information was limited, and that he was not permitted to copy Kia's documents because the information was confidential and the company relies on such data to maintain its competitive position.

In late November of 2010, Mr. Tyler requested additional detailed confidential information from another human resources employee. The employee was not aware of Mr. Tyler's EEOC charge, but reported his request for documents to Mr. Jackson. Concerned that Mr. Tyler was acting outside of his job responsibilities (and Kia's interests), Mr. Jackson asked him to sign a conflict of interest agreement barring him from "seek[ing] . . . files or documents that relate in any way to the merits of [his] claim . . . against . . . [Kia]." D.E. 56-18.[1]

After Mr. Tyler signed the agreement, another employee (who also had a pending EEOC charge against Kia) refused to sign a similar agreement. As a result, Mr. Jackson asked Kia's information technology department to review all recent network downloads. As part of the company-wide review, Kia discovered that Mr. Tyler had downloaded several company documents onto his personal computer without authorization. This violated Mr. Tyler's original confidentiality agreement and Kia's information technology user policy, as well as the conflict of interest agreement that he had just signed. Mr. Tyler was not punished for the first violation, but Mr. Jackson gave him a new computer and the company continued to monitor his actions. Two weeks later, Mr. Tyler downloaded additional documents without permission, and he was officially suspended on December 16, 2010.

---

[1] Mr. Tyler says that he signed the agreement two days after receiving it. But he also maintains that Kia's in-house counsel confirmed that he could continue to access and download company documents according to the parameters of his previous authorization. *See* D.E. 49 at 89.

Soon after the suspension, Mr. Tyler's attorney received an email from Kia requesting that all proprietary documents be returned. Mr. Tyler failed to completely comply with that request and only returned fifteen documents. Kia subsequently learned that Mr. Tyler had forwarded hundreds of emails and documents from secure company networks to his personal computer between June of 2010 and December of 2010 by blind copying his personal email account.[2]

Because Mr. Tyler failed to return all of the company's documents, Kia terminated his employment in January of 2011. One month later, Mr. Tyler filed a second EEOC charge containing similar allegations—that Kia retaliated against him for reporting the company's potentially discriminatory practices.

In April of 2014, the EEOC issued a dismissal and notice of rights to Mr. Tyler because it was "unable to conclude that the information obtained establishe[d] violations of the statutes." *See* D.E. 56-11 at 2. Mr. Tyler then commenced this Title VII retaliation action in state court.

Kia removed Mr. Tyler's complaint to federal court and moved for summary judgment after discovery. A magistrate judge issued a report recommending that the district court enter summary judgment in favor of Kia. Over Mr. Tyler's objections, the district court adopted the magistrate judge's report and recommendation, reasoning that although Mr. Tyler established a *prima facie* case

---

[2] In 2012, Mr. Tyler returned over 20,000 files to Kia pursuant to a court order.

5

of retaliation under Title VII, Kia provided a legitimate, non-retaliatory reason for his suspension "'pending the outcome' of an investigation into [his] downloading of documents and the unauthorized removal of proprietary documents," *see* D.E. 72 at 6, and for his termination because he subsequently failed to comply with Kia's requests that he return all proprietary documents. The district court then concluded that Mr. Tyler failed to show that Kia's proffered reasons were pretextual.

Mr. Tyler now appeals.

## II

We review *de novo* the district court's grant of summary judgment in favor of Kia. *See Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Id.* at 836–37; Fed. R. Civ. P. 56(a).

## III

Title VII prohibits an employer from retaliating against an employee for "opposing any practice" made unlawful by Title VII. *See* 42 U.S.C. § 2000e-3(a). *Cf. CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (holding that "42 U.S.C. § 1981 encompasses claims of retaliation"). Where, as here, there is only

circumstantial evidence of retaliation, we use the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to analyze a Title VII and § 1981 retaliation claim. *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). This means that Mr. Tyler was required to first establish a *prima facie* case "by showing that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *See id*. at 1307–08.

The burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the challenged adverse action. *See McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008) (citation omitted). If the employer meets this burden, the inference of retaliation drops out of the case, and the plaintiff bears the burden of demonstrating that the employer's proffered reason for its decision was pretextual. *See Bryant*, 575 F.3d at 1308. In other words, an employee needs to demonstrate "such weaknesses . . . or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *See McCann*, 526 F.3d at 1375.

In this case, Mr. Tyler argues that the district court erred by granting summary judgment in favor of Kia for three main reasons. First, he contends that his suspension was an adverse employment action and that Kia did not offer a legitimate, non-retaliatory reason for the suspension. Second, Mr. Tyler asserts

7

that the record demonstrates that his actions were authorized.  Third, Mr. Tyler claims that he rebutted Kia's non-retaliatory reasons for suspending and terminating his employment by showing that Kia would never have questioned his actions if he had not reported the company's alleged discriminatory practices.

**A**

Mr. Tyler's first argument is that his suspension (which led to his termination) was an adverse employment action and that Kia did not provide a specific, non-retaliatory reason for suspending him.  We agree with Mr. Tyler that a suspension that results in termination is an adverse employment action.  *See, e.g.*, *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (describing an adverse employment action as one that causes "a *significant* change in employment status, such as hiring, firing, failing to promote, [or] reassignment with *significantly* different responsibilities") (emphasis in original).  We disagree, however, that the district court failed to consider whether Kia had a legitimate reason for the suspension.

In a thorough report and recommendation, the magistrate judge expressly referenced Kia's reason for suspension—"remov[al] [of] proprietary documents," *see* D.E. 68 at 54—and discussed the events that led to Kia's investigation and discovery of Mr. Tyler's downloading and copying activities. Following Mr. Tyler's objections to the magistrate judge's report and recommendation, the

8

district court agreed that Kia had pointed to the investigation and retrieval of documents as a reason for suspending Mr. Tyler, and explained that although Mr. Tyler showed that he was given remote access to company information, he had not demonstrated that he had authority to download and copy company documents.

Like the district court, we conclude that Kia met its burden of production, *see McCann*, 526 F.3d at 1375, by explaining that Mr. Tyler was investigated for improperly downloading proprietary documents and that the investigation revealed that he had been copying sensitive materials to a personal email account over a five-month period.  Additionally, as the magistrate judge pointed out, Mr. Tyler was not actually suspended until mid-December, after he was caught downloading documents a second time, in direct contravention of the company's IT policy and the conflict of interest agreement he had signed.  Because Kia met its burden, Mr. Tyler was therefore required to persuasively show that Kia's proffered reason for his suspension was pretextual. *See id.*

**B**

Mr. Tyler's second argument is that Kia authorized him to download and copy company documents throughout his employment.  To support this claim, Mr. Tyler makes a conclusory statement that he "offered irrefutable evidence showing that his direct supervisor, [Mr.] Jackson, gave [him] remote access to all [Kia] files and that [he] was also authorized to copy files to memory sticks and

9

flash drives." Br. of Appellant at 18. But Mr. Tyler does not cite to the record to support this argument. Moreover, he has not tried to cast doubt on other evidence that tends to show that his actions were unauthorized.

First, Mr. Tyler testified in his deposition that he had signed a confidentiality agreement as a condition of his employment and a form that required his acknowledgment that he was not permitted to copy any information on Kia's internal networks. The parties do not dispute that, because of the nature of his job, Mr. Tyler was given permission to review and maintain confidential records. He has not provided any evidence, however, demonstrating that he was authorized to copy (or download) those records onto his personal computer or to blind copy sensitive matters to his personal email address.

Second, the undisputed fact that Mr. Jackson had approved Mr. Tyler's remote access request does not create an inference that he knew that Mr. Tyler was regularly downloading and copying materials. Mr. Tyler apparently equates Mr. Jackson's remote access approval as knowledge and authorization for copying and downloading, but we, like the district court, do not think that Mr. Tyler has cited evidence demonstrating that Mr. Jackson (or anyone at Kia) authorized him to download and transmit company documents to his personal email account. Indeed, the record indicates that Mr. Tyler submitted a request to use portable storage devices in order to work from home, *see* D.E. 56-12 at 2, and that he had

10

permission to remotely access company files he needed for his job while remaining inside Kia's secured network.

Third, the record shows that Mr. Tyler was involved in the approval process for Kia's user information technology policy, which took effect in July of 2009, over one year before Kia began investigating his actions. That policy included language prohibiting the copying of proprietary documents and warning Kia's team members that any violation could lead to termination or other civil or criminal liability. Instead of pointing to evidence showing that he was authorized to essentially violate the IT policy, Mr. Tyler downplays the significance of the policy.[3]

Fourth, approximately two weeks after signing the conflict of interest of agreement and receiving a new computer, Mr. Tyler downloaded additional files without permission. He does not cite to any portion of the record to rebut Kia's position that his suspension directly followed a second violation of the company's IT policy and the conflict of interest agreement.

On this record, we conclude that the evidence, viewed in the light most favorable to Mr. Tyler, does not demonstrate (or create an issue of fact) that he was

---

[3] Mr. Tyler testified in his deposition that Kia's policy "was never formally communicated to team members," *see* D.E. 49 at 102, but that does not rebut Kia's position that he was acting outside of his authorized capacity (and in direct contravention of the policy) by downloading and blind copying company documents to a personal email account.

authorized to download and copy Kia's company materials to his personal computer and email account.

## C

Mr. Tyler's third argument is that he rebutted Kia's non-retaliatory reasons for suspending and terminating his employment by showing that Kia would never have questioned his downloading activities had he not reported the company's alleged discriminatory practices.  At this stage of the *McDonnell-Douglas* burden-shifting framework, the inference of retaliation has been removed, *see Bryant*, 575 F.3d at 1308, and Mr. Tyler was therefore required to provide evidence creating a genuine issue of material fact that all of Kia's "legitimate reason[s] for [its] employment decision[s] w[ere] pretextual."  *See McCann*, 526 F.3d at 1376.  In other words, Mr. Tyler needed to address his improper actions and "meet [each of Kia's] reason[s] head on and rebut" them.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).  Mr. Tyler has not done that here.

In support of his position, Mr. Tyler points to his suspension letter and the conflict of interest agreement, and says that those documents demonstrate that Kia's only purpose for suspending him was to prevent him from collecting evidence to support his EEOC charges against Kia.  But Mr. Tyler does not provide any evidence demonstrating "weaknesses, implausibilities, [or]

inconsistencies," *see McCann*, 526 F.3d at 1375, related to Kia's claims (1) that the company-wide investigation was triggered by another employee's refusal to sign a conflict of interest agreement; (2) that Mr. Tyler continually violated company policy by downloading and copying confidential matters to his personal email account; (3) that Mr. Tyler was first given a clean computer and then suspended because of a second violation of company policy; or (4) that Mr. Tyler was terminated directly following his refusal to return all proprietary documents. Given that Mr. Tyler has not even attempted to address each of Kia's reasons head on, we conclude that he has failed to provide sufficient evidence for a jury to find pretext here.[4]

## IV

Because Mr. Tyler has not shown that Kia's legitimate, non-retaliatory reasons for suspending and terminating his employment were pretextual, we affirm the district court's grant of summary judgment in favor of Kia.

**AFFIRMED.**

---

[4] Mr. Tyler also cites to three cases discussing how temporal proximity of a protected action (like filing an EEOC charge) and adverse employment actions may establish a causal connection. While temporal proximity may be sufficient to establish the causal connection element of a *prima facie* case of retaliation, *see Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1278 (11th Cir. 2008), that element is no longer in dispute. We therefore decline to address that portion of his argument.