[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11081
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cv-01216-JA-KRS

YVETTE GILES,

Plaintiff-Appellant,

versus

DAYTONA STATE COLLEGE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(October 25, 2013)

Before MARCUS, PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Yvette Giles, an African-American female, appeals pro se the district court's

grant of summary judgment in favor of her former employer, Daytona State

College, Inc. ("Daytona State"), on her race discrimination and retaliation claims brought under the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10, and on her interference and retaliation claims brought under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615.[1]  We affirm.

## I.

In July 2011, Giles filed a pro se complaint against Daytona State, asserting FCRA claims for race discrimination and retaliation and FMLA claims for interference and retaliation.[2]  She alleged that she began working as a Senior Learning Specialist in Daytona State's Academic Support Center ("ASC") in February 2003.  In March 2008, she was promoted to the position of Assistant Director of the ASC, while a less-qualified white woman, Dr. Judy Campbell, was promoted to Director.  In February 2009, Dr. Campbell allegedly gave Giles, in an effort to intimidate Giles, a newspaper article describing the murder of Wharlest Jackson, an African-American man who had been murdered based on his seeking and obtaining a promotion at work ("the Jackson article").

Giles further alleged that, during the spring of 2009, she took family medical leave under the FMLA to care for her ailing parents, and shortly after her return,

---

[1] Giles also sued Daytona State for race discrimination under 42 U.S.C. §§ 1981 and 1983, but she did not address those claims on appeal, and thus, they are deemed abandoned. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1293 (11th Cir. 2009).

[2] Although Giles filed her complaint pro se, an attorney later entered an appearance on her behalf.

Daytona State informed her that her annual contract would not be renewed for "budgetary reasons." She appealed the 2009 nonrenewal of her contract through the college's internal mediation process, asserting FMLA retaliation and race discrimination, and ultimately, she was reinstated on August 13, 2009.

Following her reinstatement, Giles contended that Daytona State and, specifically, Dr. Campbell, discriminated and retaliated against her by relocating her to another office, stripping her of many of her job duties, monitoring her "comings and goings," and denying her opportunities for career advancement. In December 2009, Giles received a poor job performance evaluation, which led to her being placed on probation. In December 2010, Daytona State informed her that her 2010 annual contract would not be renewed based on her ongoing performance issues. Giles alleged Daytona State exaggerated her performance issues and overlooked her many accomplishments in an effort to remove her in a manner that could be perceived as lawful.

Following discovery, Daytona State moved for summary judgment, which the district court granted. The court found that Giles had not established a prima facie case of race discrimination under the FCRA, because she had failed to identify a similarly situated comparator. Even if she had, the college had presented legitimate, nondiscriminatory reasons for its actions; specifically, her ongoing performance issues. Giles did not address her FCRA retaliation claim on summary

3

judgment, and thus, the court found Daytona State was entitled to summary judgment on that claim.  In addition, Giles had not demonstrated that Daytona State had interfered with her rights under the FMLA, nor had she established a prima facie case of retaliation under the FMLA.  On appeal, Giles argues the district court erred in granting summary judgment, because disputed issues of material fact remain on each of her underlying claims.

## II.

We review a district court's grant of summary judgment de novo, "applying the same legal standards as the district court." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).  Summary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact.  *Id.*  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor."  *Id.* (citation omitted).  In making this determination, we make all reasonable inferences in favor of the nonmoving party.  *Id.*

## A.

On appeal, Giles argues the district court erred in granting summary judgment to Daytona State on her FCRA race discrimination claim, because it ignored and minimized the evidence that showed discrimination, such as the Jackson article.  Moreover, Daytona State's reliance on her alleged poor

performance was pretext for the 2010 nonrenewal of her contract, because she was so proficient that she trained Dr. Campbell for the Director position, and she was the only person at the school with a Level 3 certification from the National College Learning Center Association.

The FCRA makes it unlawful for an employer to "discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." Fla. Stat. § 760.10(1)(a). Claims of race discrimination under the FCRA are governed by the same requirements of proof and the same analytical framework applicable to Title VII claims. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

Where, as here, an employee bases her discrimination claim on circumstantial evidence, we generally apply the *McDonnell Douglas* burden-shifting framework. *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). Under this framework, the employee must first establish a prima facie case for disparate treatment by showing that (1) she is a member of a protected class, (2) she was subjected to adverse employment action, (3) her employer treated similarly situated employees more favorably, and (4) she was qualified to do the job. *Id.* Even if a plaintiff does not present evidence of a comparator, she may still survive summary judgment if she presents circumstantial evidence that creates a

triable issue concerning the employer's discriminatory intent. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

If the employee establishes a prima facie case, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its action. *McCann*, 526 F.3d at 1373. If the employer does so, the employee must then show that the employer's stated reasons are a pretext for unlawful discrimination. *Id.* The plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).

Here, we reject Giles's argument that she established a prima facie case for race discrimination when Daytona State chose not to renew her contract in 2010.[3] Although the 2010 nonrenewal of her annual contract was an adverse employment action, Giles did not demonstrate that Daytona State treated similarly situated employees more favorably. Specifically, she did not identify her replacement, if any, nor did she identify anyone who had similar performance issues who received another yearly contract. Although Giles argues her failure to produce a comparator does not doom her case, *see Smith*, 644 F.3d at 1328, this argument fails under the

---

[3] On appeal, Giles did not brief her earlier arguments that Daytona State discriminated against her when it did not promote her to Director of the ASC and when it chose not to renew her contract in 2009. Accordingly, those arguments are deemed abandoned. *Carmichael*, 572 F.3d at 1293.

circumstances of her specific case.  She points to her receipt of the Jackson article

and statements from current and former employees that her treatment was "racial,"

but she did not raise these arguments before the district court in summary

judgment, and thus, she has abandoned them.  *Solutia, Inc. v. McWane, Inc.*, 672

F.3d 1230, 1239 (11th Cir.), *cert. denied*, 133 S. Ct. 427 (2012).  Nevertheless,

even if the Jackson article shows some discriminatory animus on the part of

Dr. Campbell, Giles cannot tie her receipt of the article to the 2010 nonrenewal of

her contract.  Numerous people were involved in the decision to place Giles on

probation and to allow her contract to expire, and there is no evidence that any of

those individuals had a discriminatory intent.

Even if Giles had established a prima facie case for race discrimination,

Daytona State proffered a legitimate, nondiscriminatory reason for the 2010

nonrenewal of her contract—her ongoing performance issues—and Giles failed to

present evidence creating a genuine issue of material fact regarding pretext.  The

record includes numerous examples of Giles's poor work performance.  Even

before she became Assistant Director of the ASC, she had issues with floor

coverage and promptness.  Giles herself testified that she did not properly post the

faculty office hour schedule on one occasion and failed to submit the spring

schedule for English coverage on time.  She was also reprimanded for failing to

adhere to the standard lunch hour break, and her evaluation in December 2009

indicated that she needed improvement in numerous areas.  Moreover, two independent faculty members agreed with Giles's probationary status.

In addition, the district court did not err when it concluded that Giles had not presented a prima facie case based on a reprimand or other asserted adverse employment actions, and in any event, Daytona State has proffered a legitimate, nondiscriminatory reason for her treatment, as discussed above.

## B.

On her FCRA retaliation claim, Giles argues the district court erred by determining that she had not demonstrated a causal connection between her protected activity and the 2010 nonrenewal of her contract.  Specifically, after she complained of race discrimination during the 2009 mediation, her work conditions deteriorated.

To establish a prima facie case of retaliation under the FCRA, the plaintiff must show that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action.  *McCann*, 526 F.3d at 1375.  A plaintiff satisfies the third element if she demonstrates that "the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated."  *Id.* at 1376 (alterations omitted) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)).

Here, the district court did not err by granting summary judgment to Daytona State, because Giles did not address her FCRA retaliation claim on summary judgment. She did not clearly present that claim to the district court in such a way as to afford the court an opportunity to recognize and rule on it, and there was no burden on the court "to distill every potential argument that could be made based on the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598 (11th Cir. 1995). Because she abandoned that claim in the district court, she cannot now raise it here.

Nevertheless, Giles has not shown a causal connection between the protected activity—her claims of race discrimination to the mediator in 2009—and the alleged adverse employment action. There is no evidence in the record indicating that the mediator ever shared Giles's race discrimination claims with anyone at Daytona State or that the specific decision makers in this case were aware of Giles's alleged protected activity. *See McCann*, 526 F.3d at 1376.

## C.

Giles also argues on appeal that the district court erred by granting summary judgment to Daytona State on her FMLA interference and retaliation claims. On her FMLA interference claim, she argues Daytona State burdened her ability to take family medical leave by verbally admonishing her and treating her differently when she took medical leave. On her FMLA retaliation claim, she argues that,

9

shortly after her return from extended family medical leave in May 2009, she suffered an adverse employment action when the college informed her that her position would be eliminated for budgetary reasons.

The FMLA makes it illegal "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," any FMLA rights. 29 U.S.C. § 2615(a)(1). "A plaintiff claiming interference must demonstrate by a preponderance of the evidence that she was denied a benefit to which she was entitled." *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1274 (11th Cir. 2012).

In an FMLA retaliation case, unless there is direct evidence of the employer's retaliatory intent, we employ the *McDonnell Douglas* burden-shifting framework. *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008). Under this framework, the plaintiff must first establish a prima facie case by demonstrating that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity. *Id.*

Once the plaintiff shows a prima facie retaliation claim, the burden then shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment decision. *Id.* If the defendant does so, "the employee must then show that the employer's proffered reason was pretextual by presenting

10

evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* (citations omitted) (internal quotation marks omitted).

Here, the district court properly granted summary judgment to Daytona State on Giles's FMLA interference claim. The record confirms that Giles used all of her available FMLA leave on June 22, 2009, and thus, there is no evidence that she was denied an FMLA benefit to which she was entitled. *Pereda*, 666 F.3d at 1274.

The district court also properly granted summary judgment to Daytona State on Giles's FMLA retaliation claim. As an initial matter, she identifies only the 2009 nonrenewal of her contract and facing a hostile work environment upon her reinstatement as adverse employment actions, and thus, she has abandoned other previously identified adverse employment actions. *Carmichael*, 572 F.3d at 1293. As for the 2009 nonrenewal of her contract, Giles has not identified a compensable FMLA injury, because she was reinstated fully to the Assistant Director position in August 2009. Moreover, she has provided no evidence to support her contention that she faced a hostile, non-supportive, and retaliatory environment upon her reinstatement sufficient to raise a cause of action.

**AFFIRMED.**

11