Sylvan C. JOLIBOIS, Plaintiff,

v.

**FLORIDA INTERNATIONAL UNIVERSITY BOARD OF TRUSTEES, et al., Defendants.**

Case No. 1:13–cv–22368–KMM.

United States District Court,
S.D. Florida.

Signed March 13, 2015.

Anthony Sanchez, Anthony F. Sanchez, P.A., Miami, FL, for Plaintiff.

Lourdes Espino Wydler, Oscar Edmund Marrero, Alexandra C. Hayes, Marrero & Wydler, Coral Gables, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

K. MICHAEL MOORE, Chief Judge.

THIS CAUSE comes before the Court upon the Motions for Summary Judgment filed by Defendant Florida International University Board of Trustees ("FIU") (ECF No. 91) (the "FIU Motion"), Defendants Amir Mirmiran and Atorod Azizinamini[1] ("Defendants Mirmiran and Azizi-

---

1. Defendant Amir Mirmiran is the Dean of the College of Engineering, and Defendant Atorod Azizinamini is the Chairman of the Depart-

ment of Civil and Environmental Engineering within the College of Engineering of FIU.

namini," sometimes "Dean Mirmiran" and "Chair Azizinamini") (ECF No. 93), and Defendant Mark B. Rosenberg[2] ("Defendant Rosenberg") (ECF No. 95). Plaintiff Sylvan C. Jolibois ("Plaintiff") filed a Response (ECF No. 103) and Defendants jointly filed a Reply (ECF No. 107). Defendants' Motions are therefore ripe for review. UPON CONSIDERATION of Defendants' Motions, Plaintiff's Response, Defendants' Reply, the Second Amended Complaint, the applicable evidence, and being otherwise fully advised in the premises, the Court enters the following Order GRANTING Defendants' Motions.

## I. BACKGROUND

Plaintiff was a tenured professor in the College of Engineering at FIU and is of African heritage and Haitian national origin. Second Am. Compl. (ECF No. 77) ¶¶ 12, 25. Plaintiff asserts that FIU began discriminating against him after he became outspoken about FIU's failure to provide aid to Haiti after the devastating earthquake in 2010. See Pl.'s Resp. at 17. FIU denied Plaintiff's applications for competitive and non-competitive sabbaticals, suspended him for a semester, and eventually terminated him. Second Am. Compl. ¶ 22. Thus, Plaintiff filed his seven-count Second Amended Complaint alleging: (1) race and national origin discrimination in violation of the federal Civil Rights Act, 42 U.S.C. §§ 2000e et seq. ("Title VII"), against FIU; (2) retaliation in violation of Title VII, against FIU; (3) race and national origin discrimination in violation of the Florida Civil Rights Act (the "FCRA"), against FIU; (4) retaliation in violation of the FCRA, against FIU; (5) claims under 42 U.S.C. § 1983 ("§ 1983") for deprivation of substantive and procedural due process rights protected by the

Fourteenth Amendment, against Defendants Mirmiran and Azizinamini; (6) claims under § 1983 for deprivation of substantive and procedural due process rights under the Fourteenth Amendment, and for retaliation in violation of First Amendment free speech rights, against Defendant Rosenberg; and (7) declaratory judgment, against FIU. Id. ¶¶ 25–75.

Defendants move for summary judgment on various grounds analyzed in detail below.

## II. LEGAL STANDARD

Summary judgment may be entered only where there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir.1994); Fed.R.Civ.P. 56(a). An issue of fact is "material" if it is a legal element of the claim under the substantive law applicable to the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.; see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, if the nonmoving party's evidence and arguments are merely colorable and raise only some doubt, summary judgment may be granted in favor of the moving party. See id. at 586, 106 S.Ct. 1348. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

**2.** Defendant Rosenberg is the President of FIU and is sued in his official capacity under

42 U.S.C. § 1983.

The moving party bears the burden of meeting this standard, *id.*, and the district court views the evidence and makes all factual inferences therefrom in the light most favorable to the nonmoving party. *Tyson Foods,* 121 F.3d at 646. To meet this burden, the moving party must cite to particular evidence in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials." *Ritchey v. Southern Nuclear Operating Co.,* 423 Fed.Appx. 955, 956–57 (11th Cir. 2011) (quoting Fed.R.Civ.P. 56(c)(1)(A)).

## III. *DISCUSSION*

### A. *Discrimination and Retaliation Claims against FIU (Counts I–IV)*

In Counts I and III, Plaintiff alleges he was discriminated against on the basis of his race and national origin when FIU denied his sabbatical request, suspended him, and eventually terminated him. Second Am. Compl. ¶¶ 22–23, 25–33, 41–48. In Counts II and IV, he alleges FIU retaliated against him by suspending him and eventually terminating him because he filed EEOC Charges of Discrimination after being denied a sabbatical. *Id.* ¶¶ 22, 37, 52. FIU moves for summary judgment arguing that it had legitimate, nondiscriminatory reasons to deny Plaintiff's sabbatical request, suspend him, and eventually terminate him.

#### 1. *Plaintiff's Discrimination Claims*

█ Claims of race discrimination are analyzed under the same framework whether they are brought under Title VII or the FCRA. *Giles v. Daytona State Coll., Inc.,* 542 Fed.Appx. 869, 872 (11th Cir. 2013) (citing *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998)). The same is true for claims of national origin discrimination. *Id.* Hence, the Court will analyze Plaintiff's discrimination

claims under Title VII's analytical framework. *See id.*

"A plaintiff may establish a Title VII claim by presenting direct evidence of discrimination, or circumstantial evidence that creates an inference of discrimination." *Tseng v. Fla. A & M Univ.,* 380 Fed.Appx. 908, 909 (11th Cir.2010). Where, as here, an employee bases his discrimination claim on circumstantial evidence, courts apply the *McDonnell Douglas* burden-shifting framework. *Giles,* 542 Fed.Appx. at 872.

Under the *McDonnell Douglas* burden-shifting framework, an employee must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a *prima facie* case, the burden is on the plaintiff to show: (1) he belongs to a protected class; (2) he is qualified to perform the job; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the employee's protected class more favorably. *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997); *see McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the employer to show legitimate, nondiscriminatory reasons for the adverse employment action. *Holifield,* 115 F.3d at 1564. If the employer meets this burden, the burden then shifts back to the plaintiff to present "significantly probative evidence showing that the asserted [nondiscriminatory] reason is merely a pretext for discrimination." *Underwood v. Perry County Comm'n,* 431 F.3d 788, 794 (11th Cir.2005).

█ Here, the Court will assume *arguendo* that Plaintiff can establish a *prima facie* case of discrimination, because the next steps in the *McDonnell Douglas* framework are dispositive of his discrimi-

nation claims. FIU argues it denied Plaintiff's sabbatical request, suspended him, and eventually terminated him for legitimate, nondiscriminatory reasons. Namely, Plaintiff: (1) consistently performed below expectations in his annual evaluations; (2) was therefore required to submit a Performance Improvement Plan ("PIP") detailing specific steps he would take to improve as a professor; (3) failed to timely submit a PIP even after multiple extensions of time; (4) was suspended after being warned that failure to timely submit a PIP would result in disciplinary action; and (5) was terminated for failure to submit a PIP by the end of his suspension after being warned that failure to do so would result in termination. FIU Mot. at 14.

### a. *Reasons for denial of sabbatical request*

In January 2012, Plaintiff applied for sabbatical leave for the 2012–2013 academic year. Defs.' Undisputed Material Facts ("UMF") ¶ 5. He applied for two competitive sabbaticals and one non-competitive sabbatical. Pl.'s Statement of Material Facts ("SMF") ¶ 5. The Sabbatical Committee deemed all applicants worthy and ranked Plaintiff fourth among fifteen applicants for the most competitive sabbatical. *Id.;* ECF No. 62–5 at 53–54. Nevertheless, Dean Mirmiran and Chair Azizinamini did not support Plaintiff's sabbatical request because Plaintiff's annual performance evaluations, which were distinct from his sabbatical ranking, indicated his performance as a professor was unsatisfactory. *See id.* at 38–39.

Plaintiff was evaluated annually by the Engineering Department in the three main areas of teaching, research, and service. *See e.g., id.* at 77–80. In addition to statistical data derived from student evaluations, the Department provided narrative evaluations for the three main areas and also assigned an overall rating for each

category: "below expectation"; "at expectation"; or "above expectation." In the several years prior to Plaintiff's 2012 sabbatical application, Plaintiff received overall ratings of:

2011–2012: below expectation in all three categories, *id.* at 80;

2010–2011: below expectation in all three categories, *id.* at 82;

2009–2010: below expectation in all three categories, *id.* at 84;

2008–2009: at expectation in service, borderline between below expectation and at expectation in teaching and research, *id.* at 86;

2005–2006: below expectation in service, borderline between expectation and at expectation in teaching and research, *id.* at 87;

2004–2005: no overall ratings were given, but the narrative assessment shows that Plaintiff was more active in teaching, research, and service and was thanked by Dean Mirmiran for his accomplishments. *Id.* at 88.

As specific examples, Plaintiff's evaluations note that he received student evaluations far below the Department average, that students lodged several complaints against him, that he failed to secure any research funding, and that he was inactive in serving his profession through participating on committees and in faculty meetings.

After Plaintiff applied for a sabbatical, Dean Mirmiran contacted Plaintiff's Department Chair (Defendant Azizinamini) and asked whether the Chair supported Plaintiff's sabbatical request. *Id.* at 38. Chair Azizinamini responded that he could not support Plaintiff's sabbatical request because of Plaintiff's poor performance evaluations. *See id.* Dean Mirmiran, relying on Chair Azizinamini's non-support

and his own review of the performance evaluations, relayed to the Provost that he also could not support Plaintiff's sabbatical request. *See id.* at 39. Thus, despite the Sabbatical Committee recommending that Plaintiff be awarded a sabbatical, the Provost denied Plaintiff's sabbatical request. *See id.* at 48, 58–61, 77–88.

Accordingly, the Court finds that the Provost, and therefore FIU, denied Plaintiff's sabbatical request because of Plaintiff's poor performance evaluations and recommendations received through the chain-of-command—legitimate, nondiscriminatory reasons. *See id.* at 38–39, 48, 58–61, 77–88.

### b. *Reasons for suspension and termination.*

■ The Collective Bargaining Agreement ("CBA") for FIU's faculty provides that tenured faculty are to receive a Sustained Performance Evaluation ("SPE") once every seven years. ECF No. 37–5 at 3. The SPE evaluates the professor's performance over the seven-year period, assessing professional development. *Id.* If a professor's SPE shows he or she is "consistently below satisfactory in one or more areas of assigned duties," the professor will be obligated to develop a PIP[3] outlining specific measures the professor will undertake to improve. *Id.* at 6.

Chair Azizinamini initiated an SPE and found that Plaintiff consistently performed below expectations in teaching, research, and service. *See id.* at 92. Chair Azizinamini therefore told Plaintiff he would be required to submit a PIP and that he would need to meet with the Chair in order to create an acceptable PIP. Chair Azizinamini gave Plaintiff a deadline of October 12, 2012 to submit the PIP. *Id.* at 93.

Plaintiff failed to submit a PIP by the October 12 deadline, so Chair Azizinamini gave Plaintiff an extension through November 21, 2012. *See id.* at 94. Plaintiff again failed to submit a PIP by the new deadline, so Chair Azizinamini issued a Letter of Reprimand, gave Plaintiff an additional extension of time through December 12, 2012, and advised Plaintiff that failure to meet the new deadline would "result in further disciplinary action." *See id.* at 95, 99. Thus, when Plaintiff again failed to submit a PIP by December 12 (the third deadline missed), Dean Mirmiran issued a Notice of Intent to Suspend Plaintiff for the Spring 2013 semester. *Id.* at 100–01. Dean Mirmiran gave Plaintiff ten days to respond to the Notice of Intent to Suspend before the proposed action would be taken. *Id.* at 101. Plaintiff failed to respond. *See id.* at 102. Dean Mirmiran therefore issued a Suspension Letter stating Plaintiff was suspended without pay for the Spring semester for his repeated failure to submit a PIP. *Id.* at 102–03. Based on the foregoing, the Court finds that Plaintiff was suspended for legitimate, nondiscriminatory reasons; namely, his repeated failure to timely submit a PIP and his failure to respond to the Notice of Intent to Suspend.

■ The Court will now address the reasons for Plaintiff's termination. The Notice of Intent to Suspend and Suspension Letter extended the PIP deadline to the end of Plaintiff's suspension (May 16, 2013), and informed him that failure to submit a PIP by that time would result in his termination. *Id.* at 100–101; 102–103. Plaintiff submitted the first draft of his PIP on April 15, 2013; however, Chair Azizinamini rejected the draft because

---

**3.** The CBA outlines the requirements for the PIP, namely, "[t]he [PIP] shall be developed by the employee, in concert with his/her supervisor, and [shall] include specific measurable performance targets and a time period for achieving the targets. The [PIP] shall be approved by the Dean/Director and the Provost or designee." ECF No. 37–5 at 6.

"the plan [was] incomplete and [did] not address the specific deficiencies that resulted in requiring the development of the PIP." *Id.* at 107. The Chair provided advice and specific comments on multiple drafts to assist Plaintiff in formulating and submitting an acceptable PIP. *Id.* at 107–08; ECF No. 32–16 at 1–3. Plaintiff failed to submit an acceptable PIP by the May 16, 2013 deadline, so, on May 17, 2013, Dean Mirmiran issued Plaintiff a Notice of Intent to Terminate Employment. ECF No. 62–5 at 109–10. Dean Mirmiran gave Plaintiff ten days to respond to the Notice of Intent to Terminate Employment. *Id.* at 110. In response, Plaintiff submitted a document titled "3–Year Professional Improvement Plan (PIP)," *id.* at 111–15; however, he submitted the purported PIP eleven days after the May 16, 2013 deadline. *Id.* at 112. The Dean therefore terminated Plaintiff from employment for his failure to submit a PIP by the deadline. *Id.* at 116–17. Based on the foregoing, the Court finds Plaintiff was terminated for a legitimate, nondiscriminatory reason.

To summarize, the Court finds that Plaintiff was: (1) required to submit a PIP because he consistently performed below satisfactory in his annual performance reviews; (2) suspended for his failure to timely submit a PIP after missing three deadlines; and (3) ultimately terminated for failure to submit a PIP by the end of his suspension which he was warned would result in his termination. FIU suspended and terminated Plaintiff for legitimate, nondiscriminatory reasons.

The burden is therefore shifted to Plaintiff to offer significantly probative evidence that FIU's stated reasons for denying his sabbatical request, suspending him, and terminating him were actually pretext for unlawful discrimination. *Underwood,* 431 F.3d at 794.

### c. *Pretext for denial of sabbatical request*

■ As to the denial of his sabbatical, Plaintiff alleges he was denied a sabbatical not because of his unsatisfactory performance evaluations but because he is black and Haitian. Second Am. Compl. ¶¶ 25–33. As evidence, he argues that he was ranked highly amongst sabbatical applicants by the Sabbatical Committee. Pl.'s Resp. at 5. He also argues he "challeng[ed] the propriety of the denial of his [sabbatical]" across several correspondences between April 2012 and August 2012, yet only received pretextual reasons in response, referring to FIU's stated reason of his unsatisfactory performance evaluations. *Id.*

Plaintiff's argument fails. Here, Plaintiff was denied a sabbatical because, despite what the Sabbatical Committee recommended, Plaintiff's Department Chair and Dean could not support his sabbatical request given he had consistently performed below expectations as a professor. ECF No 62–5 at 38–39, 48, 58–61, 77–88. The Dean told Plaintiff repeatedly throughout the referenced correspondence that he denied Plaintiff's sabbatical request because of Plaintiff's poor evaluations. *Id.* at 58–61. The evidence shows that for the six years prior to his sabbatical request, Plaintiff consistently performed below expectations. *Id.* at 80–87. Thus, FIU's stated reason for denying his sabbatical request was not pretext but rather was a legitimate, nondiscriminatory reason. *See Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir.2000) ("A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut

it, and the employee cannot succeed by simply quarrelling with the wisdom of that reason."). Plaintiff does not argue, for instance, that his evaluations were fabricated. The Court therefore cannot find that FIU's reason for denying Plaintiff's sabbatical request was pretextual. *See id.* ("[F]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions ... [this Court's] inquiry is limited to whether the employer gave an honest explanation of its behavior.")

### d. *Pretext for suspension and termination*

■ As to Plaintiff's suspension and termination, he argues the PIP requirement was imposed pretextually as FIU had never required any other faculty member to submit a PIP. Pl.'s Resp. at 5–6. Plaintiff's argument is unavailing. The analysis above shows that Plaintiff: (1) consistently performed below expectations in his annual evaluations; (2) was therefore required to submit a PIP as authorized and outlined in his CBA; (3) failed to timely submit a PIP after multiple extensions of time and was therefore suspended, as had been warned; and (4) was terminated for failure to submit a PIP by the end of his suspension, as had been warned. Moreover, although Plaintiff was the first professor required to submit a PIP pursuant to the seven-year SPE evaluation, the SPE policy was first approved in 2009. *See* ECF No. 90 ¶ 7 n. 6. Plaintiff was coincidentally the first professor to attain an unsatisfactory SPE evaluation. *Id.* at ¶¶ 3, 7; FIU Reply at 5. There is insufficient evidence to raise an inference of pretext.[4] *See Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. 2505. *Chapman*, 229 F.3d at 1030.

Accordingly, Plaintiff's Title VII and FCRA discrimination claims against FIU (Counts I and III) fail as a matter of law.

### 2. *Retaliation Claims*

■ Plaintiff alleges that he filed EEOC Charges of Discrimination and that FIU therefore retaliated against him by suspending him and ultimately terminating him. Second Am. Compl. ¶¶ 36–37. "Title VII and the [FCRA] prohibit employers from taking an adverse employment action against an employee because he participated in a protected activity." *Schoppman v. Univ. of S. Fla. Bd. of Trsts.*, 519 Fed. Appx. 549, 552 (11th Cir.2013). The Court analyzes Plaintiff's Title VII claims of retaliation and FCRA claims of retaliation under the same standard. *See Giles*, 542 Fed.Appx. at 872.

■ "A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) he engaged in an activity protected under Title VII; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir.2008). Where, as here, a plaintiff seeks to prove his retaliation claim through circumstantial evidence, courts apply the same burden-shifting framework established in *McDonnell Douglas. See Brungart v. BellSouth Telecomms. Inc.*, 231 F.3d 791, 798 (11th Cir. 2000).

■ Here, it is undisputed that Plaintiff (1) engaged in activity protected under Title VII (filing EEOC Charges of Discrimination), and (2) suffered adverse employment actions (suspension without pay and termination). Accordingly, the only issue is whether there was a causal connection between the filing of his EEOC Charges of Discrimination and FIU suspending and terminating him. *See Crawford*, 529 F.3d at 970.

---

**4.** Notably, Plaintiff does not argue that his draft PIP's were rejected pretextually or that his PIP deadlines were set arbitrarily and pretextually.

Plaintiff argues that the "close temporal proximity" between the EEOC Charges and the adverse employment actions establish causation. Pl.'s Resp. at 6–7. As evidence, Plaintiff notes that he filed a Charge of Discrimination on October 30, 2012, and was suspended on December 17, 2012 and terminated on May 16, 2013.[5]

The Court will again assume *arguendo* that Plaintiff can establish a *prima facie* case of retaliation, because the next steps in the *McDonnell Douglas* framework are dispositive.

FIU notified Plaintiff on December 17, 2012 of its intent to suspend him "for ... failure to submit a [PIP] as previously requested on more than one occasion." ECF No. 62–5 at 100. Before that, Plaintiff was warned that failure to timely submit a PIP would result in "further disciplinary action." *Id.* at 95. Hence, Plaintiff was suspended because he missed three deadlines to submit his PIP and had been warned that missing the last deadline would result in disciplinary action. Thus, despite any coincidental temporal proximity to Plaintiff's Charge of Discrimination, FIU suspended Plaintiff for legitimate, nondiscriminatory reasons.

Likewise, Plaintiff was terminated for legitimate, nondiscriminatory reasons; namely, he failed to submit a PIP by the end of his suspension as requested. *See id.* at 116–17. FIU warned Plaintiff that failure to submit a PIP by the end of his suspension would result in his termination. *See id.* at 102–03, 106. Thus, FIU terminated Plaintiff from employment for legitimate, nondiscriminatory reasons, despite terminating him after he filed his Charges of Discrimination.

The burden is therefore shifted to Plaintiff to offer significantly probative evidence that the aforementioned reasons for his suspension and termination were pretext for retaliation.

Plaintiff contends that it was FIU's "intention—from the beginning—to secretly document [Plaintiff's] file in order to initiate a procedure designed to eliminate him." Pl.'s Resp. at 8. This argument is conclusory. Plaintiff fails to point to any evidence in the record that his disciplinary proceedings, suspension, and termination were initiated as a clandestine plan to "eliminate him." To the contrary, the evidence shows Plaintiff was: (1) required to submit a PIP because he consistently performed below expectations in his annual reviews; (2) suspended for his failure to submit a PIP after missing three deadlines to do so; and (3) ultimately terminated for failure to submit a PIP by the end of his suspension after being warned that such failure would result in termination. Plaintiff's own missteps account for the actions FIU took and there is no evidence of a nefarious plan to eliminate him. Plaintiff's retaliation claims (Counts II and IV) therefore fail as a matter of law.

### 3. *Conclusion*

For the foregoing reasons, the Court GRANTS FIU's Motion for Summary Judgment against Plaintiff's Counts I–IV.

### B. *§ 1983 Claims against Defendants Mirmiran and Azizinamini (Count V)*

Under Count V, Plaintiff asserts claims for violation of his (1) substantive due process rights to employment and (2) procedural due process rights to employment secured by the Fourteenth Amendment. He alleges that Defendants Mirmiran and

---

**5.** The Court notes that the Letter of Reprimand and imposition of the PIP requirement are not adverse employment actions under Title VII. *See Brown v. Sybase, Inc.,* 287 F.Supp.2d 1330, 1342—43 (S.D.Fla.2003).

Azizinamini violated his substantive and procedural due process rights by suspending him and terminating him without notice and a hearing. Second Am. Compl. ¶¶ 58–59.

#### 1. *Substantive Due Process Claim*

 Defendants Mirmiran and Azizinamini move for summary judgment against Plaintiff's substantive due process claim arguing public employment is not a fundamental right protected by substantive due process. Mirmiran and Azizinamini Mot. at 4.

 Substantive due process rights protect "fundamental" rights—rights that are "implicit in the concept of ordered liberty." *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994). Public employment is not a fundamental right protected by substantive due process. *Id.* Plaintiff's substantive due process claims for his suspension and termination from public employment therefore fail as a matter of a law.[6]

#### 2. *Procedural Due Process Claim*

Under this claim, Plaintiff alleges that Defendants Mirmiran and Azizinamini suspended and terminated Plaintiff without notice and a hearing, and without presenting evidence of just cause. *Id.* ¶¶ 58–59.

 A tenured public employee cannot be terminated from employment without notice and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Specifically, a "tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence,

and an opportunity to present his side of the story." *Id.* "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* The same or lesser due process requirements apply to suspension without pay. *See id.*

 Plaintiff's allegations as to his suspension are contradicted by the evidence. Before Plaintiff was suspended, FIU issued him a Letter of Reprimand for failing to timely submit a PIP, which warned him that failure to provide a PIP by the extended deadline would "result in further disciplinary action." ECF No. 62–5 at 95. Plaintiff was reminded again, the day before the deadline expired, that failure to timely submit a PIP would "result in further disciplinary action." *Id.* at 99. So, when Plaintiff failed to submit his PIP, FIU issued him a Notice of Intent to Suspend that: (1) stated he would be suspended for the Spring semester for his repeated failure to timely submit a PIP; (2) advised Plaintiff he had ten days in which to respond in writing before the proposed suspension would be executed; (3) provided a detailed explanation of the reasons for the proposed suspension, including citation to the CBA, PIP requirements, and FIU's disciplinary policy; and (4) also notified Plaintiff he would be terminated from employment in six months at the end of his suspension if a PIP was not submitted by that time. *Id.* at 100–01. Plaintiff chose not to respond. *See id.* at 102–03. FIU then issued a Notice of Suspension, which provided several paragraphs detailing the aforementioned rea-

---

**6.** Plaintiff argues in his Response that he instead alleged a substantive due process claim for violations of his First Amendment rights, perhaps recognizing that his right to public employment is not a fundamental right and therefore could not survive as alleged. *See* Pl.'s Resp. at 9. However, even the most generous reading of Plaintiff's allegations shows he plainly did not allege a First Amendment violation against Defendants Mirmiran and Azizinamini. *See* Second Am. Compl. ¶¶ 56–59. Plaintiff's attempt to recast this claim as a First Amendment claim is disingenuous and improper.

sons he was suspended. *See id.* at 102–03. Thus, the Court finds that FIU (and Defendants Mirmiran and Azizinamini) gave Plaintiff notice of the charges against him, an explanation of its evidence for just cause, and an opportunity to respond (which Plaintiff chose not to take advantage of).[7] *See Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487.

Plaintiff's procedural due process allegations regarding his termination are also contradicted by the evidence. FIU: (1) told Plaintiff six months prior to his termination that failure to submit a PIP by the deadline would result in his termination; (2) reminded Plaintiff near the midpoint to his PIP deadline that failure to timely submit a PIP would result in his termination; (3) issued Plaintiff a Notice of Intent to Terminate for failure to timely submit a PIP; (4) advised Plaintiff he had ten days in which to respond in writing before the proposed termination would be executed; and (5) recounted the many conversations, letters, and notices that had informed Plaintiff of the reasons for his suspension and impending termination. *Id.* at 102–03, 106, 109–10. Plaintiff's only response was his submission of a PIP eleven days after the PIP deadline. *See id.* at 111–15. Thus, the Court finds that FIU (and Defendants Mirmiran and Azizinamini) gave Plaintiff notice of the charges against him, an explanation of its evidence for just cause, and an opportunity to respond. *See Loudermill,* 470 U.S. at 546, 105 S.Ct. 1487.

### 3. *Conclusion*

For the foregoing reasons, the Court GRANTS Defendants Mirmiran and Azizinamini's Motion for Summary Judgment against Plaintiff's Count V.

### C. *§ 1983 Claim against Defendant Rosenberg (Count VI)*

Under Count VI, Plaintiff asserts claims for violation of his (1) substantive due process rights to employment, (2) procedural due process rights to employment, and (3) First Amendment rights to free speech. He alleges Defendant Rosenberg, FIU's President, violated his substantive and procedural due process rights to employment by suspending and terminating him without notice and a hearing. Second Am. Compl. ¶¶ 64. He also alleges Defendant Rosenberg violated his free speech rights by suspending and terminating him in retaliation for openly expressing his desire to travel to, research, and assist Haiti following the devastating 2010 earthquake. *Id.* ¶¶ 64–66.

As to Plaintiff's substantive and procedural due process rights to employment, the Court concludes Defendant Rosenberg did not violate Plaintiff's rights for the same reasons the Court stated in Parts III.B.1–2, *supra.* Specifically, Plaintiff has no substantive due process right to employment, and FIU gave Plaintiff notice of the charges against him, an explanation of its evidence for just cause, and an opportunity to respond.

---

**7.** The Court notes that Plaintiff advances a series of arguments that lack merit and therefore do not warrant written analysis. The Court has considered Plaintiff's arguments on this issue and finds them unavailing. Specifically, Plaintiff argues: (1) he did not receive "notice" of his impending suspension because he believed that only FIU's President could discipline him and therefore disregarded the Letter of Reprimand and Notice of Intent to Suspend from Dean Mirmiran; (2) the Letter of Reprimand and Notice of Intent to Suspend were confusing because they were written on "single space, two page letters" and did not verbatim quote the cited portions of the CBA; and (3) he believes the repeated failure to timely submit a PIP, when warned that failure to do so would result in discipline, does not establish just cause. *See* Pl.'s Resp. at 11–13.

As to Plaintiff's claim of retaliation in violation of his First Amendment rights, the Court concludes for the same reasons stated in Part III.A.2, *supra,* that Defendant Rosenberg did not violate Plaintiff's First Amendment rights by suspending and terminating him. FIU suspended and terminated Plaintiff for legitimate business reasons and there is no evidence FIU did so because of Plaintiff's communicated desire to travel to, research, and assist Haiti.

For the foregoing reasons, the Court GRANTS Defendant Rosenberg's Motion for Summary Judgment against Plaintiff's Count VI.

### D. *Declaratory Judgment against FIU (Count VII)*

Claims asserted under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, require an independent ground of subject matter jurisdiction in order to be maintained. *Borden v. Katzman,* 881 F.2d 1035, 1037 (11th Cir.1989); *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir.1980). Here, because the Court has granted summary judgment against all of Plaintiff's other claims, the Court lacks jurisdiction to consider Plaintiff's declaratory judgment count. *See Borden,* 881 F.2d at 1037, 1039.

Accordingly, the Court GRANTS FIU's Motion for Summary Judgment against Plaintiff's Count VII.

### IV. *DISPOSITION*

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED as follows:

1. FIU's Motion for Summary Judgment is GRANTED;
2. Defendants Mirmiran and Azizinamini's Motion for Summary Judgment is GRANTED;
3. Defendant Rosenberg's Motion for Summary Judgment is GRANTED.

All other pending motions are DENIED AS MOOT. The Clerk of Court is instructed to CLOSE this case.