[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14867
Non-Argument Calendar

_____

D.C. Docket No. 7:15-cv-00138-HL


JOHN LEWIS HOGAN, III,

Plaintiff-Appellant,

versus

SOUTH GEORGIA MEDICAL CENTER,

Defendant,

HOSPITAL AUTHORITY OF VALDOSTA
AND LOWNDES COUNTY, GEORGIA,
d.b.a. South Georgia Medical Center,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(October 10, 2018)

Before ED CARNES, Chief Judge, MARCUS, and HULL, Circuit Judges.

PER CURIAM:

John Hogan, III, sued his former employer, the Hospital Authority of Valdosta and Lowndes County, Georgia, under Title VII of the Civil Rights Act and 42 U.S.C. §§ 1981 and 1983.  He claims that the hospital discriminated and retaliated against him because he is black.  The district court granted the hospital's motion for summary judgment, and Hogan appeals.

I.

Hogan worked for the hospital as a dialysis technician from September 2011 to July 2013.[1]  He was the only hospital employee in the dialysis department.  Everyone else working in that department was employed by South Georgia Acute Dialysis (SGAD), a company the hospital hired to run and staff the department.  Those employees reported to Dr. Arunas Urbonas, SGAD's owner, while Hogan reported to a nurse manager for the hospital.  But Hogan worked closely with Urbonas and the SGAD nurses, and they determined when Hogan was to report to work each day based on the number of patients needing dialysis treatment.  Urbonas or one of the SGAD nurses would text Hogan the day's treatment schedule, and Hogan was to arrive in time to clean and prepare the dialysis

---

[1]  Hogan began working for Smith Northview Hospital in 2007.  In 2011 the Hospital Authority acquired Smith Northview Hospital and re-hired Hogan that September to continue working in the dialysis department.  For ease of reference, when we refer to the "hospital," we mean the hospital as managed and operated by the Hospital Authority.

machines before the patients came.  Hogan was also responsible for assisting the nurses in monitoring the patients during treatment and disinfecting the machines and water systems after each session.  The hospital required Hogan to keep a log book documenting each time he cleaned the machines.  It also required him to maintain his CPR certification and undergo yearly training.

When the hospital hired Hogan in September 2011, it paid him an hourly wage of $10.06.  Hogan complained about his pay and learned that the human resources department did not have a copy of his dialysis technician certification; when he provided it, the hospital raised his pay to $11.07 per hour.  In March 2012 the hospital gave Hogan an annual pay raise, increasing his pay to $11.29 per hour.  And the hospital paid him $4.00/hour for the time he was on call, though Hogan says that his on-call hours were more limited than those of other employees.[2] In addition to his work at the hospital, Hogan also owned and operated a taxicab business, which the hospital did not object to so long as it did not interfere with his work at the hospital.

In January 2013 the nurse manager of Hogan's department left.  He had managed the dialysis department and the spine clinic and served as Hogan's direct supervisor.  Hogan wanted to apply for the job, but the hospital did not post the

---

[2]  In his brief before this Court Hogan repeats the allegation from his Amended Complaint that his on-call wage was $2.00 per hour, but the undisputed evidence shows that Hogan's pay was raised to $4.00 per hour when the Hospital Authority acquired Smith Northview Hospital in 2011.

position as vacant.  And when Hogan expressed interest to the departing nurse manager and Urbonas, they told him that there was not an open position.  Instead, the hospital reassigned management of the dialysis department to Darlene Williams, the assistant chief nursing officer who also managed (and continued to manage) the medical-surgical department.  She is white.  According to Hogan the administrative changeover prevented him from receiving an annual pay raise because it delayed his evaluation.

A few months after Williams began managing the dialysis department, Hogan complained to Leonard Carter, a manager at the hospital, that one of the SGAD nurses, Lisa McCutchin, was receiving training necessary for advancement but he was not.  He also told McCutchin's supervisor, Urbona; his own supervisor, Williams; and the hospital's risk management officer, Earl Boyett, that he did not think McCutchin was performing her job correctly.

While all of this was going on, Hogan's own relationships with Urbona and Williams were breaking down.  Williams noted that Hogan was often on his phone at work, and McCutchin told Williams that Hogan was running his taxicab business while on duty at the dialysis clinic.  The director of human resources spoke with Hogan multiple times about various problems in his job performance.  And when Hogan went to Williams to discuss McCutchin, Williams turned the

4

conversation back to Hogan's own performance.  Hogan says he told Urbona and Boyett that the hospital was discriminating against him.

Things came to a head on May 10, 2013.   Hogan showed up late for work when a patient was scheduled for dialysis, and Williams observed Hogan using his cell phone in front of patients.  She issued a disciplinary action report, suspended Hogan for three days without pay, and instructed him to report to work each day by 8:30 a.m.  Four days later she reported to the risk management department that Hogan had reported cleaning the machines on certain days when he had not actually done so.  Observers conducting a mock Joint Commission survey at the hospital later that month noted the same thing.  Those observers also saw Hogan making personal calls at work and failing to follow the hospital's guidelines on infection prevention.  And they learned that Hogan's CPR certification had lapsed.

Williams gave Hogan a negative performance review on June 5, 2013, and the hospital placed him on a performance improvement plan.  Among other things the plan required Hogan to report to work by 8:00 a.m. each day, refrain from using his cell phone at work, and document his cleaning and testing of the machines each day instead of filling in the logs by memory at the end of the week. The next month the hospital determined that Hogan's performance had not improved and terminated his employment.  The hospital hired a new dialysis technician, a black woman, to replace Hogan.

5

Hogan sued the hospital, asserting claims for race discrimination and retaliation under Title VII of the Civil Rights Act and 42 U.S.C. §§ 1981 and 1983. He claimed that the hospital discriminated against him based on his race by (1) failing to promote him to manager of the dialysis department; (2) not providing him with additional training opportunities; (3) limiting the number of on-call hours he could get paid for; (4) suspending his employment; (5) placing him on a performance improvement plan; (6) terminating his employment; and (7) retaliating against him for complaining about discrimination. After discovery the district court granted summary judgment to the hospital on all of these claims.[3]

## II.

We review de novo a district court's grant of summary judgment and draw all reasonable inferences and review all evidence in the light most favorable to the non-moving party. See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1225 (11th Cir. 2005) (quotation marks omitted).

---

[3] Hogan also brought claims under state law, but they were dismissed by the district court under Federal Rule of Civil Procedure 12(b)(6). The district court also granted summary judgment to the hospital on a hostile work environment claim Hogan attempted to raise in his response brief to the hospital's motion for summary judgment. Hogan does not seek relief from either ruling, and we do not address the claims because "[i]ssues not raised on appeal are considered abandoned." AT&T Broadband v. Tech Commc'ns, Inc., 381 F.3d 1309, 1320 n.14 (11th Cir. 2004).

Hogan challenges the district court's treatment of his response to the hospital's statement of material facts, which the hospital had submitted under a local rule as part of its motion for summary judgment.  The local rule also required Hogan to respond to "each of the movant's numbered material facts" that he disputed.  M.D. Ga. L.R. 56.  Despite this, Hogan did not respond to the hospital's numbered material facts and instead submitted a short statement arguing his version of the facts and raising hypothetical questions about those presented by the hospital.  Because Hogan did not comply with the rule the district court deemed the hospital's facts admitted and viewed its motion for summary judgment as functionally unopposed.

Hogan now claims that the district court's decision amounts to error because his response "did refer to citations in the record where genuine issues of material issues of fact existed and it would be inappropriate to deem these responses argumentative and hypothetical."  This passing argument is not enough to preserve the issue on appeal.  See Keister v. Bell, 879 F.3d 1282, 1287 n.2 (11th Cir. 2018).  And even if it were, we give "great deference to a district court's interpretation of its local rules" and review only for an abuse of discretion.  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302–03 (11th Cir. 2009).  To meet this standard, Hogan bears the burden of showing that the "district court made a clear error of judgment," which his fleeting remark does not do.  Id. at 1302–03.

Like the district court, then, we consider the hospital's motion as "the functional analog of an unopposed motion for summary judgment." Id. at 1303 (quotation marks omitted). Even with an unopposed motion, we "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Id. The hospital is "not absolved of the burden of showing that it is entitled to judgment as a matter of law." Id.

## III.

Hogan challenges the district court's grant of summary judgment on his race discrimination claims and his retaliation claim. We consider each in turn.

## A.

Because Hogan alleged only circumstantial evidence of race discrimination, the district court analyzed his claims under the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and we will do the same. Under that framework Hogan must show that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside of his class more favorably; and (4) he was qualified to do the job. McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008). If he can satisfy these elements, the hospital must provide a "legitimate, nondiscriminatory reason" for its action. Id. And if that burden is met, Hogan must then show that the hospital's

8

reasons are a pretext for unlawful discrimination.  Id.  The elements of §§ 1981 and 1983 claims in the employment context are the same as the elements of a Title VII claim, so we will consider them together.  Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 843 n.11 (11th Cir. 2000).

None of Hogan's claims succeed under this framework.  First, his claim that the hospital discriminated against him by not promoting him to nurse manager of the dialysis department fails because he has not shown that the job existed once his original supervisor left or that he was qualified for it if it did continue to exist.  See Walker v. Mortham, 158 F.3d 1177, 1191–92 (11th Cir. 1998) (explaining that a plaintiff bringing a failure-to-promote claim must show that "[he] applied for and was qualified for an available position, that [he] was rejected, and that after [he] was rejected [the employer] either continued to seek applicants for the position, or . . . filled the position with a[n] [employee outside the plaintiff's protected class]") (quotation marks omitted).  The hospital presented evidence that it simply added the administrative responsibility to Williams' existing duties and that the position held by Williams required a bachelor's degree in nursing, a master's degree in nursing, four years of experience in nursing, and four years of supervisory experience.  Hogan had none of those qualifications.

Second, Hogan's failure-to-train claim fails because he has not shown how the hospital's failure to provide Hogan with the same training that McCutchin

9

received constitutes an adverse employment action. "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action." Davis v. Town of Lake Park, 245 F.3d 1232, 1238 (11th Cir. 2001). Instead, "an employee must show a serious and material change in the terms, conditions, or privileges of employment." Id. at 1239. Hogan has provided no evidence that the terms of his employment were affected by not being able to attend the training alongside McCutchin. Nor is McCutchin a similarly situated comparator to begin with: She was a nurse working for a contractor of the hospital while Hogan was a dialysis technician working for the hospital directly. "As such, [McCutchin] and [Hogan] were dissimilar in several critical respects, and were a far cry from being nearly identical." Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1193 (11th Cir. 2016) (quotation marks omitted).

Third, Hogan has not identified a similarly situated comparator for his compensation-related claims, so they also fail. While he alleges that the hospital restricted his on-call hours "to prevent the payment of on call wages when he was in fact on call at times and did not receive on call pay" like some employees who were white, this general allegation does not suffice to survive summary judgment. Hogan was the only hospital employee working in the dialysis department, and he has not shown that the employees outside his department were similarly situated to him. See id.

10

Fourth, as for his allegation that the delay in his initial pay raise and the delay in his final evaluation were based on his race, Hogan once again fails to identify a similarly situated employee whose certification was recognized any faster or whose 2013 evaluation came any sooner. And even if he had, the hospital has presented undisputed evidence showing that as soon as the HR department had Hogan's technician certification in hand it gave him the raise and that Hogan's final evaluation fell within the timeframe allowed by the hospital's employee guidelines. Hogan has not shown that these race-neutral explanations were pretext for race discrimination.

Fifth, Hogan claims that his three-day suspension and his placement on a performance improvement plan were based on his race. Suspension without pay is unquestionably an adverse employment action, see Akins v. Fulton Cty., 420 F.3d 1293, 1301–02 (11th Cir. 2005), and we will assume that placement on the performance improvement plan is, too. But even if both events constitute adverse employment actions, Hogan has not shown either "(a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct." Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989). It is undisputed that Hogan arrived late for work on May 10 when he received the

11

suspension and that his performance review on June 5 was overwhelmingly negative and resulted in his placement on the improvement plan. Though Hogan questions in his brief why these disciplinary actions occurred, the hospital presented evidence of what the relevant work rules were and how Hogan violated them. Given the district court's ruling that the hospital's motion for summary judgment was functionally unopposed, this undisputed evidence was enough to show that the hospital was entitled to judgment as a matter of law on this issue. See Mann, 588 F.3d at 1302–03.

Sixth, the district court properly granted summary judgment on Hogan's termination claim. To make out a prima facie case of discriminatory discharge, Hogan must show, among other things, that "he was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class." Flowers v. Troup Cty., Ga., Sch. Dist., 803 F.3d 1327, 1336 (11th Cir. 2015). But Hogan has not identified a similarly situated employee who received more favorable treatment than he did, and it is undisputed that he was not replaced by someone outside of his protected class because the hospital hired a black woman to replace him. The district court did not err in granting summary judgment on this issue, either.

B.

This leaves Hogan's contention that the district court should not have entered summary judgment on his retaliation claims. To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected expression, (2) he suffered "a materially adverse action," and (3) "there was a causal connection between the protected activity and the adverse action." Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012). For purposes of a claim brought under Title VII, statutorily protected expression refers to an employee (1) "oppos[ing] any practice made an unlawful employment practice by [Title VII]" or (2) "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

The district court found that Hogan failed to show that he engaged in statutorily protected expression, but we choose to resolve this issue on different grounds and will assume that Hogan complained of discrimination to Urbonas and Boyett. After arguing that the district court erred by not doing likewise, Hogan contends that "[a] jury could find that the fact that . . . Mr. Hogan complained about Lisa McCutchin was the but-for cause of the discriminatory actions and retaliation that resulted in his termination." But complaining about McCutchin's job performance does not qualify as a statutorily protected expression under Title VII, so it does Hogan little good to connect his termination to that event. Nor does

13

he attempt to connect his termination to the actual statutorily protected expression — complaining of discrimination — other than to recite the timeframe of his complaint to Boyett (May 7, 2013) and his termination (July 19, 2013). Yet while temporal proximity between the statutorily protected activity and the adverse employment action can be enough to make out a prima facie showing of causation, "mere temporal proximity, without more, must be very close." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) (quotation marks omitted). We do not think that a delay of 74 days, standing alone, meets that standard.

Finally, even if Hogan made a prima facie case of retaliation, the hospital has met its burden of presenting legitimate, non-discriminatory reasons for firing him. See Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002) (applying McDonnell Douglas burden-shifting framework in retaliation context). The evidence shows that Hogan was not performing his job duties satisfactorily; that the hospital placed him on a performance improvement plan; and that when his performance did not improve, the hospital terminated him and hired someone from the same protected class as Hogan to replace him. Hogan has not shown that these stated justifications were merely pretext to fire him due to his race, so the district court did not err in granting summary judgment on Hogan's retaliation claims.

**AFFIRMED.**

14